FONDER, and others, Plaintiffs-Respondents, v. AAA MOBILE HOMES, INC., and another, Defendants and Third-Party Plaintiffs-Appellants: WICK BUILDING SYSTEMS, INC., Third-Party Defendant-Respondent.

*No. 75–77. Argued September 6, 1977.—Decided October 4, 1977.*
(Also reported in 257 N. W. 2d 841.)

4

For the appellants there was a brief by *Patrick L. Crooks* and *Crooks, Crooks & Low,* and oral argument by *Patrick L. Crooks,* all of Wausau.

For third-party defendant-respondent there was a brief by *H. P. Klueter* and *Terwilliger, Wakeen, Piehler, Conway & Klingberg, S.C.,* and oral argument by *H. P. Klueter,* all of Wausau.

BEILFUSS, C. J. The issues are (1) whether there is credible evidence to support the apportionment of causal negligence between AAA and Wick, and (2) whether the contribution apportionment was grossly disproportionate.

The principal action is for damages for loss of a mobile home destroyed by fire caused by a defect in the electrical wiring.

The mobile home was constructed by Wick at Spencer, Wisconsin. It was sold to AAA in April, 1971. After being transported from Spencer to Wausau it was furnished and plugged into an electrical outlet. All the electrical appliances and connections were checked and appeared to be operating properly. The home was then displayed on the AAA sales lot in Wausau.

The mobile home was purchased by the plaintiffs in the principal action, Mr. and Mrs. James L. Fonder, on June 19, 1971. The purchase agreement provided the mobile home was sold "as shown on lot," with the exception that the furnace and water heater were to be converted from city gas to LP gas. The agreement further provided—"Deliver only. No blocking or set up."

The mobile home was transported and delivered to the Fonders on their lot at Antigo some 35 to 40 miles from Wausau by AAA on June 24, 1971.

On July 1, 1971, an electrician did the necessary electrical work to hook up the mobile home for electrical service from the utility power line. With assistance, the Fonders placed the mobile home in position and blocked it. The City Gas Company of Antigo made the necessary connections for the LP gas. The Fonders moved into the mobile home on July 4, 1971.

As soon as the Fonders moved into the home they experienced electrical shocks when they touched the walls or the appliances. Fonders was able to eliminate the shocks after he drove an eight foot copper grounding rod into the ground, which was attached by a wire to a pipe of the water system.

The Fonders also had some trouble with the gas water heater. They noticed an abnormal "snapping noise" and a small fire broke out in the closet housing the water heater. They were able to put out the fire with a fire extinguisher and experienced no further difficulty after the grounding rod was installed.

Although Mr. Meyers, the Wausau representative of AAA, stated he has no recollection, the Fonders testified they called him or his office on three or four occasions about the electrical shocks, the water heater and the small fire. Meyers took no steps to check these complaints and testified that if he had received the calls he would have advised them to call a local electrician.

During the evening of January 28, 1972, the Fonders were entertaining guests at the mobile home. The temperature was about fifteen degrees below zero. A fire again broke out in the closet housing the water heater. This fire destroyed the mobile home.

The Fonders brought this action against AAA and its insurer for the damages resulting from the fire. AAA and its insurer served a third-party complaint against Wick for contribution.

The jury returned two separate comparative answers. In one question it compared the negligence between AAA and the Fonders. It attributed 80 percent to AAA and

20 percent to the Fonders. Upon this portion of the verdict the court granted judgment against AAA and in favor of the Fonders in the amount of $11,952.86. In the second comparative negligence question in response to AAA's third-party claim against Wick, the jury found AAA 90 percent negligent and Wick 10 percent. In the supplemental judgment now before the court $1,266.01 was awarded to AAA and against Wick.

The rule repeated so often that it needs no citation is that upon review the court will view the evidence in the light most favorable to the verdict and if there is any credible evidence to support the verdict we will affirm. We have further stated this is particularly so when the verdict has the approval of the trial court.

The trial judge here did approve the verdict, but in deciding the motions after verdict indicated that if he had made the findings he might have come to somewhat different conclusions.

The case was submitted to the jury as a products liability action under sec. 402A, Restatement of Torts, as adopted in *Dippel v. Sciano,* 37 Wis.2d 443, 155 N.W.2d 55 (1967), which requires the showing of a defect that is unreasonably dangerous to the user or consumer.

The one ultimate fact that clearly emerges from the evidence is that the fire occurred because of some defect in the wiring.

The mobile home was transported a distance not in excess of 40 miles from the Wick plant at Spencer to the AAA lot in Wausau. The AAA employees did a routine electrical inspection at the AAA lot. All electrical appliances operated properly. The mobile home was delivered to the Fonders at Antigo after a trip of 35 to 40 miles. The troubles that ensued are set forth above.

Mr. Arthur Kaplan, a consulting engineer, examined the mobile home a month and a half after the fire. He testified the copper wires coming out the service panel

were burned off. It was his opinion that probable defects were a slight defect in the insulation, a kink in the wire, and a nail or staple partially driven through the insulation of the wire. He further testified that in his opinion the defect or defects were present at the time the mobile home was built but that he could not rule out the fact that a defect might have occurred in the transportation of the home to the site at Antigo.

Another expert called by the plaintiffs-Fonders testified in his opinion there was a defect in the wiring and that it was reasonably probable it was caused by insulation kinking the wire, or a nail or staple driven into the wire insulation. He also "felt" the wiring failure was evident because of the electrical shocks experienced by the Fonders before the insulation rod was installed.

Two employees of AAA testified they did nothing to alter the electrical system and that it worked well while the home was in their posesssion. The electrical system was not checked by AAA at the time of delivery in Antigo.

Another expert, Charles Snapp, testified that connections could come loose during transportation and that good practice required that the master control panel and the connections should be checked when the mobile home reaches its destination. He further testified that at the time the home was built the electrical defect was almost negligible, but as the home moved it put a burden on the circuitry and the incipient defect grew and eventually failed.

This evidence is amply sufficient to sustain a finding that there was an unreasonably dangerous defect in the mobile home when it was delivered to the Fonders so as to satisfy our products liability standards. This finding is not at issue on appeal.

We are concerned with the evidence which will establish the degree of contribution to the defect by the manufacturer, Wick, and the seller, AAA.

The evidence is minimal and not very conclusive but under the credible evidence rule it is sufficient to sustain the jury's apparent conclusion that there was a defect in the manufacture and an aggravation of that condition by the handling of the home by the seller, combined with a failure to adequately inspect upon delivery.

The more forcefully argued issue is whether the find- of 90 percent contribution on the part of AAA as con- trasted to 10 percent on the part of Wick is so grossly disproportionate as to call for a change of the answer or a new trial.

The general rule stated in *Barber v. Oshkosh,* 35 Wis. 2d 751, 754, 151 N.W.2d 739 (1967), is:

> "The general rule is that a jury's findings as to negli- gence apportionment will be sustained if there is any credible evidence that, under any reasonable view, sup- ports such findings."

In *Jagmin v. Simonds Abrasive Co.,* 61 Wis.2d 60, 83–84, 211 N.W.2d 810 (1973), the court stated:

> "The apportionment of negligence is peculiarly within the province of the jury and only in an unusual case will the court upset a jury's apportionment, particularly where the negligence of each party is not of the same kind and character. This court has also stated that it would set aside a jury's finding apportioning negligence only if at least one of three factors were present: (1) if as a matter of law the plaintiff's negligence equaled, or exceeded that of the defendant; (2) if the percentages attributed to the parties (in light of the facts) were grossly disproportionate; and (3) if there was such a complete failure of proof that the verdict could only be based upon speculation."

Under the evidence set forth above, the jury could find that there was a defect in the manufacture; that it was minimal as evidenced by testimony that the electrical

system worked satisfactorily on the lot; that transportation can cause an electrical system defect; that no inspection was made at delivery; that as soon as the home was used an electrical system defect was apparent and that AAA refused to respond when requested to do so.

Based upon this evidence, the jury could believe that AAA contributed to the defect and failed in its duty to inspect and was in a superior position to discover the defect and remedy the position. We must assume the jury came to these or like conclusions. Because of the deference we give to the jury's comparative negligence findings we cannot conclude the apportionment was erroneous as a matter of law.

*By the Court.*—Judgment affirmed.