CORYELL, and wife, Plaintiffs-Respondents, v. CONN, and another, Defendants-Appellants.

Supreme Court

*No. 76–224. Argued February 28, 1979.—Decided March 27, 1979.*
(Also reported in 276 N.W.2d 723.)

312

For the appellants there were briefs by *James A. Johnson* and *Korth, Rodd, Sommer & Mouw, S.C.*, of Rhinelander, and oral argument by *Mr. Johnson*.

For the respondents there was a brief by *William A. Melby* and *O'Melia, Melby, Smith & Schiek, S.C.*, of Rhinelander, and oral argument by *William A. Melby*.

CONNOR T. HANSEN, J. The accident occurred on November 2, 1974, at about 10 p.m. on Highway 8 near Rhinelander, Wisconsin. Conn was driving west on the highway when something happened to the steering mechanism on the automobile he was driving. The testimony is in conflict as to precisely what happened to the steering mechanism but it is undisputed that his car veered into the left traffic lane at a time when the Coryell vehicle was approaching from west, or opposite direction.

Charles D. Coryell was driving the vehicle approaching from the east. His wife, Ruth, was a passenger in the front seat. Each driver saw the other car approaching. When Coryell saw the Conn automobile veering into his lane of travel, Coryell pulled his vehicle toward the side of the road and was nearly stopped when the Conn vehicle collided with it. Conn applied the brakes to the automobile he was driving when it started to veer into the left lane and the automobile left 74-foot skid marks before the impact. Conn was arrested for driving left of the centerline and pled guilty to the charge. There

was some evidence that Conn had been drinking intoxicating beverages prior to the accident.

Both drivers were wearing seat belts and sustained only minor injuries. Ruth Coryell was not wearing a seat belt. She was thrown forward by the impact of the two vehicles and struck her chest and right knee on the dashboard. Mrs. Coryell sustained a fractured manubrium, the upper part of the sternum, and a soft tissue injury to the right knee. Because the fracture was the type that could not be put in a cast Mrs. Coryell was hospitalized for two weeks while it healed. She was in pain for much of that time. This fracture had completely healed and caused no pain at the time of trial. The knee injury continued to cause pain at the time of the trial, which was over a year and one-half after the accident.

The physician who treated Mrs. Coryell subsequent to her hospitalization testified that she had an osteoarthritic condition that was aggravated by the knee injury. He said she had also had a clotting problem prior to the accident which could have been aggravated by the injury and therefore required anticoagulent therapy for a time. He said the knee injury resulted in a firm, pigmented subcutaneous depression about one by four inches just below the right knee which was a permanent condition but did not interfere with the knee joint. He further testified that on the basis of Mrs. Coryell's subjective complaints of pain she would have to limit her lifting, bending and standing; that some ultimate minimal improvement was probable but because the complaints of pain had persisted for about two years he thought the pain was permanent. He believed that her complaints of pain were legitimate. He reviewed her prior medical history which included a knee bruise, edema due to phlebitis, and continuous complaints of muscular pain and arthritic pain in the joints, particularly in the eight months immediately preceding the accident. It was his opinion that objectively her knee injury had completely healed with no limitation of motion but he

was unable to dispute or calibrate her subjective complaints of pain. He admitted the pain could be attributed to her earlier leg problems but said that the pain appeared to be more localized to the right knee than her previous complaints.

Neither vehicle was driveable after the collision. An accident reconstruction engineer testified for the defense. He examined the Coryells' car in the salvage yard where it was taken after the accident. He testified that the seat belts were intact after the accident and in working condition. Based on tests he conducted with a model in an identical car, he concluded that if Mrs. Coryell had been wearing the seat belt her chest would not have struck the dash or windshield and her knee would not have struck the dash.

The defense introduced a photo taken shortly before the trial of the Coryells' car's dashboard. This photo showed a sticker which read "Safety belt use required in this vehicle." Mrs. Coryell denied that the sticker was in the car when they owned it. Mrs. Coryell, who was five foot four inches tall and weighed 175 pounds at the time of the accident admitted that the belt was working but said she did not wear it because it was tight and uncomfortable. She said she didn't know if it would go around her.

The jury found that the defendant, William R. Conn, was causally negligent, that Charles D. Coryell was not negligent in the manner in which he operated his automobile, and that Ruth Coryell was not negligent in failing to provide for her own safety. The jury awarded Ruth Coryell $15,000 in damages for her injuries, Charles D. Coryell $2,200 for medical expenses, $1,100 for loss of society and companionship, and $100 for his own injuries. Following motions after verdict judgment was entered on the verdict. This appeal follows and presents the following issues:

1. Is the $15,000 damage award supported by the evidence?

2. Was Mrs. Coryell negligent as a matter of law in failing to use her seat belt?

3. Did statements made by plaintiffs' counsel in his closing argument result in prejudice to defendant?

Appellants contend that the damage award is excessive because there was no evidence of permanency and because no evidence was introduced to assist the jury in separating the injury sustained in the accident from Mrs. Coryell's prior leg problems.

In reviewing a jury's award of damages this court must first determine if the record supports the various elements of a damage claim, such as bodily injury, pain and suffering and permanency. Where the trial court has sustained the verdict over a claim of excessiveness the question is whether there is any credible evidence that under any reasonable view supports the verdict and removes the issue from the realm of conjecture. To reverse this court must be able to say that there is such a complete failure of proof that the verdict must be based on speculation. *Sabinasz v. Milwaukee & Suburban Tr. Corp.*, 71 Wis.2d 218, 222–226, 238 N.W.2d 99 (1976).

" 'In actions sounding in damages merely, where the law furnishes no legal rule for measuring them, the amount to be awarded rests largely in the discretion of the jury, and with their verdict the courts are reluctant to interfere. As shown elsewhere, a verdict may be set aside as excessive by the trial court or on appeal when, and not unless, it is so clearly excessive as to indicate that it was the result of passion, prejudice, or corruption, or it is clear that the jury disregarded the evidence or the rules of law. . . .

" 'Since it is for the jury, and not for the court, to fix the amount of the damages, their verdict in an action for unliquidated damages will not be set aside merely because it is large or because the reviewing court would

have awarded less. Full compensation is impossible in the abstract, and different individuals will vary in their estimate of the sum which will be a just pecuniary compensation. Hence, all that the court can do is to see that the jury approximates a sane estimate, or, as it is sometimes said, see that the results attained do not shock the judicial conscience. . . .'" *Bethke v. Duwe,* 256 Wis. 378, 384, 385, 41 N.W.2d 277 (1950).

The trial court here reviewed the medical evidence in light of appellants' challenge. The court concluded:

". . . The fact that the doctors could not specifically delineate the pain she claimed resulted from the accident, as opposed to the pre-existing myalgia, does not conclusively determine that the jury speculated as to the award which would duly compensate for the injuries sustained in the accident. It is a reasonable inference from the medical evidence that the accident sufficiently aggravated her pre-existing condition to warrant the verdict ascertained by the jury. . . ."

and

". . . In the immediate case, there was medical testimony that Mrs. Coryell's pain may continue into the future and this court appropriately instructed as to permanency."

Where, as here, an injury is subjective and a layman cannot know if it will continue, expert medical testimony is necessary with regard to permanency and future pain and suffering. *Diemel v. Weirich,* 264 Wis. 265, 268, 58 N.W.2d 651 (1953).

". . . Only a medical expert is qualified to express an opinion to a medical certainty, or based on medical probabilities (not mere possibilities), as to whether the pain will continue in the future, and, if so, for how long a period it will so continue. . . ." *Id.* at 268.

The trial court relied on *Drexler v. All American Life & Casualty Co.,* 72 Wis.2d 420, 241 N.W.2d 401 (1976), even though acknowledging that *Drexler* involved a ver-

dict based on current and past complaints of pain. *Drexler* is applicable here only for the limited purpose of allowing the jury to believe the plaintiff's past and present subjective complaints of pain without expert medical corroboration, and therefore has no effect on the substantive rule set forth in *Diemel, supra,* as to future pain and suffering.

The physician testified that because of the time lapse between the date of the accident and the date of trial and the persistence of the symptoms, it was necessary for him to modify his original opinion in regard to the knee injury sustained by Ruth Coryell. Objectively he was of the opinion there had been a complete recovery but subjectively he could not reach the same conclusion. It was his opinion that her complaints were now more limited than previously and that they had localized to her right knee, the one injured in the accident.

The jury was entitled to believe the testimony of the attending physician and attribute present and future pain in the right knee to this accident. The jury could reasonably conclude there was some permanency rather than a continuing temporary disability attributable to the injury sustained in the accident. While the award of damages is perhaps high, we are not persuaded that it was excessive.

The jury found that Ruth Coryell was not negligent in failing to provide for her own safety. On appeal the appellants contend she was negligent as a matter of law in failing to wear her seat belt and, as a result, the jury verdict is grossly disproportionate and contrary to the great weight and clear preponderance of the evidence.

On appeal, this court is, by long-standing precedent, obligated to consider the evidence from a viewpoint most favorable to the respondents. The obligation is to search for credible evidence that will sustain the verdict, not

for evidence to sustain a verdict the jury could have but did not reach.

We would first observe that this issue does not concern a question of the causal connection between the injuries sustained by Ruth Coryell and her failure to wear the seat belt. The jury never reached this question because they found her not negligent in failing to provide for her own safety. The issue therefore is not one of disproportionment of causal negligence but rather whether the finding of no negligence is supported by credible evidence.

The trial court correctly perceived the issue in hearing and deciding motions after verdict and concluded:

"As to the issue of negligence on the part of Ruth Coryell for not wearing her seat belt, this court believes that to change the jury's finding as to her causal negligence would be an improper invasion of the province of the jury. If the members of the jury felt that a reasonable person was under no obligation to wear his seat belt under the circumstances of the accident, then that is a conclusion which the court must respect. There is no statute which required wearing of seat belts, violation of which make this action negligence per se. Rather, this determination remains within the common, everyday experiences of men. The duty of the jury is to apply their experience within these bounds and answer the questions put to them accordingly. There is no indication that this duty was breached. Therefore, the court is obligated to enter judgment on the verdict."

In *Bentzler v. Braun*, 34 Wis.2d 362, 385, 149 N.W.2d 626 (1967), this court refused to hold that it is negligence per se to fail to use a seat belt when one is available. This conclusion was based, at least in part, on the fact that the legislature had not deemed it necessary to require mandatory use of seat belts. Here we would observe that since *Bentzler* the legislature has, at least on two occasions, failed to enact legislation to require the use of seat belts. 69 S.B. 214, which would have

amended sec. 347.48, Stats., to require the use of seat belts, was indefinitely postponed on January 15, 1970. 1969 Senate Journal 2487. In 1976, an amendment to sec. 347.48 was enacted which prohibited the division of motor vehicles from adopting a rule requiring the use of seat belts. Sec. 347.48(3), created by Laws of 1975, ch. 337, effective June 13, 1976. This amendment was prompted by an attempt by the division of motor vehicles to adopt such a rule.

In *Bentzler, supra,* at 387, this court held:

". . . In view of the Wisconsin statutes that the legislative mandate in regard to seat belts applies merely to installation and not to use, the failure to use available seat belts is a question for determination by the jury as in the case of any ordinary negligence, *i.e.,* was the conduct a substantial factor in producing a result.

"We therefore conclude that, in those cases where seat belts are available and there is evidence before the jury indicating causal relationship between the injuries sustained and the failure to use seat belts, it is proper and necessary to instruct the jury in that regard. A jury in such case could conclude that an occupant of an automobile is negligent in failing to use seat belts . . . ."

In the case here under consideration the trial court correctly concluded there was evidence that a seat belt was available to Ruth Coryell and that there was evidence before the jury indicating causal relationship between the failure to use the seat belt and the injuries sustained. Consequently the following instruction was given:

"Now, as the rules of law apply to the plaintiff, Ruth Coryell, you are instructed in considering whether or not she was negligent, that you may take into consideration the facts in this case that show that the vehicle in which she was riding was equipped with safety belts and that they were available for use by her. You will determine under all the credible evidence and reasonable inferences

from the evidence in this case whether the failure of Ruth Coryell to use the safety belt was an omission to take a precaution for her safety and amounted, under the circumstances, as failure on her part to exercise ordinary care for her own safety[,]"[1]

The jury instruction as given is in accordance with the mandate of *Bentzler, supra.* It correctly apprised the jury of the law and of their duty in weighing and considering the evidence.

Under the facts of this case, we have no hesitancy in stating that had the jury found Ruth Coryell negligent in failing to provide for her own safety we would, in all probability, affirm. However, the jury in the exercise of its duty concluded otherwise. As they viewed the evidence of this case, her failure to use the safety belt was not an omission to take a precaution for her own safety to the extent that it constituted a failure on her part to exercise ordinary care for her own safety.

We deem it appropriate to note a distinction in the posture of the instant case and *Bentzler v. Braun, supra.* In *Bentzler* the jury found Janet Bentzler negligent and the issue before the court was whether there was any causal connection between the injuries she sustained and the failure to use a safety belt. The trial court found there was no causal connection and this court affirmed. Here we do not reach the question of causal connection because the jury found Ruth Coryell not negligent in failing to provide for her own safety. We believe the rule of *Bentzler* both contemplated and implied a standard of reasonable care in determining negligence based upon failure to use available seat belts. Such a determination is within the province of the jury when properly instructed as they were in this case. As *Bentzler* makes clear, sec. 347.48, Stats., is not a safety statute and it is

[1] The jury instruction given was substantially the same as Wis J I—Civil, Part I, 1277.

not incumbent upon the trial court to answer, as a question of law, the question of whether a reasonable person of ordinary prudence would or would not use seat belts under a given set of circumstances.

The question of whether Ruth Coryell was negligent for failing to provide for her own safety was properly submitted to the jury with appropriate instructions.

The final contention of the appellants is that statements made by the plaintiffs' lawyer in his closing argument were improper and had a prejudicial effect on the jury. Specifically challenged are counsel's use of a blackboard to compute future medical expenses after it had been agreed that no instruction would be given on such expenses, his attack on the defendant's honesty and his reference to the defendant's insurer as a wealthy corporation that should be known as Wisconsin "No-Pay" Insurance Company.

In this case no request was made to have the closing arguments reported and consequently they are not a matter of record.[2] This court has repeatedly said that it will not review allegedly prejudicial statements which are not part of the record.[3]

This court has considered such alleged errors when counsel have stipulated to what was said, or the trial court has reconstructed the statements on the record. *Roehl v. State,* 77 Wis.2d 398, 253 N.W.2d 210 (1977); *State v. Jennaro,* 76 Wis.2d 499, 512, 251 N.W.2d 800 (1977); *Johnson v. State,* 75 Wis.2d 344, 368, 249 N.W.2d 593 (1977); *State v. Tew,* 54 Wis.2d 361, 363, 195 N.W. 2d 615 (1972). The court has refused to consider a

[2] Sec. 256.55(3), Stats., renumbered sec. 757.55 by Laws of 1977, ch. 187, sec. 96, effective August 1, 1978.

[3] *Roehl v. State,* 77 Wis.2d 398, 417, 253 N.W.2d 210 (1977); *Rodenbeck v. American Mutual Liability Insurance Co.,* 52 Wis.2d 682, 190 N.W.2d 917 (1971).

lawyer's silence, when confronted by the remarks, as an admission that he made them. *Smith v. State,* 65 Wis.2d 51, 55, 221 N.W.2d 687 (1974) ; *Jennaro, supra,* at 512; *Johnson, supra,* at 370.

In the instant case at trial the defense counsel objected to the alleged prejudicial remarks after argument and moved for a mistrial after the jury had retired. The trial court denied the motion. No attempt was made to preserve the remarks, counsel at no time stipulated as to what was said and the trial court has not attempted to reconstruct the statements for the record. On motions after verdict the trial court considered the alleged argument regarding the use of the blackboard as related to the computation of future medical expenses and remarks of counsel for the plaintiffs concerning the credibility of defendant-Conn. The record contains no reference by the trial court to the alleged prejudicial remarks concerning defendant-Conn's insurer. When deciding the motions after verdict the trial court concluded that any error that might be attributable to the use of the blackboard was not prejudicial since the jury did not award the plaintiffs any damages for future medical expenses and that counsel's remarks concerning the credibility of Conn were justified because of inconsistencies in his testimony.

Without a record and absent any explicit concession by counsel for the plaintiffs as to what was argued, the trial court nevertheless gave his diligent attention to the alleged prejudicial remarks made during closing arguments. On the basis of this record there is no way this court can determine exactly what was said or the context in which any such statement might have been made. Since counsel did not preserve the record, we are obliged to rely on the findings of the trial court. Accordingly we find no alleged error can be supported by the record.

The appellants also ask that we exercise our discretion and grant a discretionary reversal pursuant to the pro-

visions of sec. 251.09, Stats. 1973, now sec. 751.06, Laws of 1977, ch. 187, sec. 76, effective August 1, 1978. We have examined the record and considered the arguments advanced by counsel. It is our conclusion that the controversy was fairly and fully tried by competent and experienced counsel and we are not convinced it is probable that justice has miscarried. Therefore, we decline the suggestion that this court grant a discretionary reversal.

*By the Court.*—Judgment affirmed.