Linda KEMPF, Plaintiff-Respondent,

v.

Dennis K. BOEHRIG, Defendant-Appellant.†

Court of Appeals

*No. 79–925. Submitted on briefs November 8, 1979.—
Decided February 26, 1980.*
(Also reported in 290 N.W.2d 720.)

† Petition to review denied.

For the defendant-appellant, a brief was submitted by *Alan D. Eisenberg* and *Thomas D. Kuehl*, both of Milwaukee.

For the plaintiff-respondent, a brief was submitted by *Neil Hobbs* of *Edgarton & Hobbs* of Fond du Lac.

Before Voss, P.J., Brown and Bode, JJ.

BODE, J. This negligence action arises out of a July 18, 1975 motorcycle-pedestrian accident involving defendant Dennis Boehrig's minor son Jeffrey and the plaintiff Linda Kempf. The plaintiff thereafter commenced this action for personal injuries alleging that Jeffrey Boehrig was negligent in the operation of his motorcycle and that Dennis Boehrig was negligent in the control and supervision of his son. Jeffrey died of cancer prior to trial, so the matter was tried with Dennis Boehrig as the sole defendant.

In response to the special verdict questions, the jury found Jeffrey and Dennis Boehrig and the plaintiff all causally negligent of the accident and assigned the following percentages to each of them:

| | |
|---|---|
| Jeffrey Boehrig | 35% |
| Dennis Boehrig | 60% |
| Linda Kempf | 5% |

The jury assessed the plaintiff's damages at $15,131.75. After the verdict, the defendant moved for judgment notwithstanding the verdict on grounds that he was not

negligent as a matter of law and for a reduction in damages on grounds that the amount awarded by the jury was excessive. The trial court denied these motions whereupon the defendant brought this appeal.

The accident occurred on Linden Beach Road in Taycheedah, Wisconsin sometime between 9:00 and 9:30 p.m. Linden Beach Road runs east from Lake Winnebago to Highway 151. It is a county blacktop road, twenty feet in width with no center line or shoulder. Although it is a county owned road, there was at the time of the accident a "private" sign located at the point where it joins Highway 151.

Earlier in the day, the defendant had purchased the motorcycle involved in the accident for his son. He bought the motorcycle so Jeffrey could drive to and from his job at the Town and Country Club. Shortly after 9:00 p.m., Jeffrey left the Boehrig cottage and drove his motorcycle south on Lake Road. Lake Road is a private gravel road that runs north and south and joins Linden Beach Road at its west end. Jeffrey turned his motorcycle left onto Linden Beach Road and proceeded east. Approximately 540 feet east of the intersection of Lake Road and Linden Beach Road, the plaintiff and a female friend were conversing with two boys on motorcycles who had parked them either just off the road or in the eastbound lane of traffic. As Jeffrey approached the group, the plaintiff saw a motorcycle coming towards them with the headlight "bobbing around." The plaintiff attempted to run to the north side of the road to avoid the oncoming motorcycle. Jeffrey swerved his motorcycle to avoid hitting one of the motorcycles parked on or near the road and struck the plaintiff, breaking two bones in her ankle.

The plaintiff testified it was dusk at the time of the accident. In a deposition taken before his death, Jeffrey testified it was completely dark. After the accident,

Jeffrey told the investigating police officer that he was adjusting the headlight on the motorcycle while he drove east on Linden Beach Road just prior to the accident. In his deposition, Jeffrey admitted adjusting the headlight but claimed he completed the adjustment before turning onto the paved road. Jeffrey further stated that his parents never told him that he could not drive the motorcycle after dark.

The defendant admitted he had not specifically forbidden Jeffrey to operate the motorcycle after dark. He also testified he allowed Jeffrey to ride on Linden Beach Road but that he believed it was a private road. Jeffrey was under sixteen years of age on the date of the accident. He did not have a driver's license or learner's permit authorizing him to operate a motorcycle on public roads.

Section 343.45, Stats., provides in part:

343.45 **Permitting unauthorized person to drive.** (1) No person shall cause or knowingly permit his child or ward under 18 years of age to operate a motor vehicle upon any highway in violation of this chapter or when such minor is not authorized under this chapter to operate a motor vehicle.

(2) No person shall authorize or knowingly permit a motor vehicle owned by him or under his control to be operated upon any highway in violation of this chapter or by a person who is not authorized under this chapter to operate a motor vehicle. . . .

An obvious purpose of the above statute is to protect other users of highways from the dangers inherent in the operation of a motor vehicle by one too inexperienced or incompetent to do so safely. The prohibition against minors under the age of sixteen constitutes a legislative determination that such minors are incompetent.

When the purpose of a statute is to protect a certain class of persons from a particular type of harm, a vio-

lation of the statutory prohibition which results in the foreseen harm to a member of the protected class constitutes negligence per se. *Weiss v. Holman,* 58 Wis.2d 608, 616–17, 207 N.W.2d 660, 664 (1973); *Meihost v. Meihost,* 29 Wis.2d 537, 540, 139 N.W.2d 116, 118 (1966). Thus, if the defendant knowingly permitted Jeffrey to operate his motorcycle in violation of Chapter 343, Stats., and that permission resulted in the injuries complained of here, the finding of negligence against him must be affirmed.

The defendant, however, contends that he cannot be found negligent absent evidence that the child was disobedient or that he knew of the child's negligent activity and failed to stop it.

The standard of care imposed upon a parent in this situation and the evidence necessary to establish a violation of that standard were set forth in the supreme court's two opinions in *Hopkins v. Droppers,* 184 Wis. 400, 198 N.W. 738 (1924), and *Hopkins v. Droppers,* 191 Wis. 334, 210 N.W. 684 (1926).

The first *Hopkins* opinion involved review of the trial court's order overruling the defendant's demurrer. The case arose out of an accident in which the minor plaintiff was injured after falling off a motorcycle negligently operated by the defendant's minor son. The complaint alleged that the defendant placed the motorcycle in complete control of his son, who he knew or should have known was an inexperienced driver, and in so doing, he knowingly encouraged his son to violate a state statute, which violation resulted in the injuries complained of.

In affirming the trial court's ruling that the complaint stated a cause of action against the father, the court stated:

The general object of that statute has been already stated. The statute amounts to a legislative declaration that a minor under sixteen is unfit to drive motor ma-

chines on the public streets unless accompanied by an adult, and a violation of the statute is negligence.

When the father authorized this violation of law he failed in that duty which every good citizen owes to the public. He failed to observe for the safety of other persons that degree of care which the circumstances justly demanded. Although the motorcycle was not in itself a dangerous instrumentality, it was a machine of such a nature that when negligently driven it might menace the safety of other persons. This is a well known fact and one which in the exercise of ordinary care the father could reasonably anticipate. *Hopkins v. Droppers, supra,* at 412, 198 N.W. at 742.

At trial, the jury returned a verdict finding the defendant negligent in the supervision and control of his son. Upon appeal, the supreme court reversed and exonerated the defendant. The reversal, however, was not a repudiation of the above quoted rule.

At the *Hopkins* trial, several witnesses testified that the defendant father specifically forbade his son to operate the motorcycle in violation of the statute (when unaccompanied by an adult). The plaintiff offered no evidence to contradict this testimony. The court thereupon found that in the absence of evidence that the child was disobedient and in need of further restraint, the defendant had exercised proper supervision and control over his son. *Hopkins v. Droppers,* at 336–37, 210 N.W. at 685.

The evidence in the instant case, however, is quite far removed from the situation in *Hopkins.* We need not reach the question here of whether Jeffrey was generally disobedient and could have been expected to violate a parental command. Although his operation of the motorcycle was clearly unauthorized by law, it is equally clear that his doing so violated no directive of his father. The defendant purchased the motorcycle for Jeffrey to use in traveling back and forth to his job at a golf

course. This use clearly involved travel on public highways. Jeffrey had driven motorcycles after dark on several previous occasions, apparently with the defendant's knowledge. A jury could reasonably conclude that Jeffrey was given complete control over the motorcycle and the time and places in which it could be used. With the exception of the defendant's statement concerning an "agreement" with his son that he not operate the motorcycle after dark, there is no evidence of any restrictions on Jeffrey's operation of the motorcycle. The existence of any agreement about riding after dark was refuted by Jeffrey's own testimony at the deposition.

The defendant's open acquiescence to his son's operation of a motorcycle in violation of state law was a failure on his part to exercise ordinary care for the safety of others lawfully using the public highways. Such conduct constitutes negligence and was properly found to be such by the jury.

The defendant also contends he may not be held liable as a joint tort feasor absent evidence of negligence on his part. As noted above, the unrestricted entrustment of the motorcycle to his minor son constituted negligence. This contention, therefore, is without merit.

The verdict is also challenged on grounds that the accident and injuries complained of were not foreseeable. This same argument was raised and rejected in the first *Hopkins* decision with the following quote:

"It is not required that the 'specific' injury or 'such' an injury as is complained of was or ought to have been specifically anticipated as the natural and probable consequence of the wrongful act. It is sufficient if the facts and circumstances are such that the consequences attributable to the wrongful conduct charged are within the field of reasonable anticipation; that such consequences might be the natural and probable results thereof, though they may not have been specifically contem-

plated or anticipated by the person so causing them." *Morey v. Lake Superior T. & T. Co.,* 125 Wis. 148, 156 (103 N.W. 271 [274]) [1905] and cases cited. *Hopkins v. Droppers,* 184 Wis. 400, 413, 198 N.W. 738, 742 (1924).

One of the objects of statutes restricting the operation of motor vehicles on public highways is to protect users of the highways from inexperienced and immature drivers. Statutes prohibiting the operation of motor vehicles by minors under licensing age are legislative declarations that such minors are incompetent drivers and do not possess sufficient care and judgment to operate motor vehicles on public highways without endangering the safety of others. 7 Am. Jur. 2d, *Automobiles and Highway Traffic* §107 (1963). It is certainly foreseeable, therefore, that parental consent to a minor's operation of a motorcycle in violation of sec. 343.45, Stats., could result in injury to another caused by the minor's negligent operation of the vehicle.

The defendant further urges this court to exercise its discretionary power to order a new trial in the interests of justice because the apportionment of negligence by the jury is so perverse that it constitutes a possible miscarriage of justice.

The apportionment of negligence made by a jury will be affirmed if there is any credible evidence that, under any reasonable view, supports such finding. *Fonder v. AAA Mobile Homes, Inc.,* 80 Wis.2d 3, 9, 257 N.W.2d 841, 843 (1977). The percentages of negligence assigned by the jury to both Jeffrey and the defendant are supported by ample evidence.

Finally, the defendant claims the damages awarded by the jury are excessive. Where the award of damages is sustained by the trial court over a claim of excessiveness,

we must affirm if there is any credible evidence that supports the award. *Coryell v. Conn,* 88 Wis.2d 310, 315, 276 N.W.2d 723, 726 (1979).

■

The trial court found the damages award to be on the high side but sustained it as supported by credible evidence. We agree. There was ample testimony that the plaintiff had experienced discomfort from the injury and will continue to do so in the future. Although the degree of permanent disability here is slight, there was evidence that her ability to walk normally has been affected and that she has been permanently scarred by the operations. We will not set aside a damage award simply because we might have awarded less than that decided upon by the jury. *Coryell v. Conn, supra,* at 315–16, 276 N.W.2d at 726; *Bethe v. Duwe,* 256 Wis. 378, 385, 41 N.W.2d 277, 280 (1950). The testimony offered concerning the plaintiff's injuries was sufficient to support the award of $15,131.75. We cannot conclude the verdict was the result of passion, prejudice. or speculation.

*By the Court.*—Judgment and order affirmed.