Mark K. FINKEN, a minor, by James C. Gutknecht, his guardian ad litem, Lueder Finken, and Roelfina Finken, Plaintiffs-Respondents,

v.

MILWAUKEE COUNTY, and Milwaukee Transport Services, Inc., d/b/a Milwaukee County Transit System, Defendants-Appellants.†

Court of Appeals

No. 83–1064. Submitted on briefs January 19, 1984.—
Decided June 13, 1984.
(Also reported in 353 N.W.2d 827.)

† Petition to review denied.

For the defendants-appellants the cause was submitted on the briefs of *Kasdorf, Dall, Lewis & Swietlik, S.C.*, with *Joseph J. Ferris* of counsel, of Milwaukee.

For the plaintiffs-respondents the cause was submitted on the briefs of *Gutknecht & Gerdes,* with *Dale P. Gerdes* of counsel, of Milwaukee.

Before Wedemeyer, P.J., Decker and Moser, JJ.

WEDEMEYER, P.J.   Milwaukee County (the County) and Milwaukee County Transport Services, Inc. (Transport) appeal from a judgment awarding Mark Finken and his parents $8,101. The County and Transport raise the following issues: (1) whether the Finkens complied with the jurisdictional prerequisite of sec. 893.80(1)(b), Stats.; (2) whether there was sufficient evidence to support the jury's findings of negligence and causation; (3) whether the amount awarded for Mark's pain and suffering was excessive or the result of perversity; and (4) whether the amounts awarded to Mark's parents for loss of society and companionship were excessive. We affirm the judgment because notice of claim was properly served, there is sufficient evidence to support the jury's findings and awards, and the trial court did not abuse its discretion in refusing to set aside the damage award for pain and suffering.

The relationship between the County and Transport is set forth in some detail in *Zinke v. Milwaukee Transport Services, Inc.,* 99 Wis. 2d 506, 299 N.W.2d 600 (Ct. App. 1980). Basically, Transport is a corporation set up to manage and operate the County's public transportation system under the supervision of the Milwaukee County Transit Board. *Id.* at 509, n. 1, 299 N.W.2d at 602. In *Zinke,* both Transport and the County agreed that Transport is an agency of the County. *Id.* at 507–08 and n. 1, 299 N.W.2d at 601. After learning of the incident precipitating this lawsuit, Transport notified the Finkens' attorney that it was the County's agent in this matter.

Prior to commencing this lawsuit, the Finkens served a document entitled "Notice of Claim and Demand for Damages" on Kenneth Warren, managing agent for Transport. The County and Transport moved for summary judgment, arguing that the holding in *Zinke* required that notice of claim be served on the county clerk before the court could exercise jurisdiction. The trial court denied the motion and the matter proceeded to jury trial.

At trial, the testimony presented in support of the Finkens' cause of action described the following events and their aftermath. On April 13, 1981, Mark Finken and his friend, Mark Oglesby, then seventh graders, boarded a bus on route sixty-seven of the Milwaukee County bus system. Both boys sat down at the very back of the bus. A few blocks later a group of about twenty youths, aged thirteen to sixteen, boarded the bus through the door, while several more climbed in through the windows. Most of the new arrivals congregated in the aisle. Both Finken and Oglesby described the group as loud and rambunctious to an extreme. When the youths boarded, Oglesby immediately concluded there would be trouble.

Within minutes, after Finken refused a demand for money by one of the entrants, several of the youths began hitting him about the face and head, continuing until Finken and Oglesby escaped through the back door. During the assault Oglesby pulled the buzzer cord to get the driver's attention. He also stated that he saw the driver watching the commotion in the rearview mirror. Neither before nor during the incident did either Finken or Oglesby see the driver take any action to control the youths. Because of their haste to depart from the bus and the number of people blocking the aisle, there was no other contact with the driver.

Finken suffered numerous cuts and bruises and was "thoroughly shaken" by the incident. He missed two days of school and was unable to talk for three or four days due to swollen lips. He experienced severe facial pain for several days and severe headaches for three weeks. At the time of trial in May, 1983, he still experienced occasional headaches and blurred vision in one eye. He did not, however, have any medical treatment beyond what he received the day after the incident and on two followup visits within the next few weeks.

Finken testified that he occasionally had flashbacks concerning the incident and avoided crowds of people. His parents testified that since the assault he had changed noticeably in his character, becoming apathetic, passive and withdrawn. His mother noted his agitation in any type of crowd situation.

Testifying for the defense was the probable bus driver during the incident, based on the boys' description of her and the driving assignments on route sixty-seven at the time of the assault. The driver denied any knowledge of an assault occurring on her bus on April 13, 1981. She testified that her outside rearview mirrors would allow her to see persons entering the bus through the windows, but she did not recall the alleged occurrence of April 13. Nor did she recall anything else out of the ordinary on that day, such as extreme rowdiness. She further testified to the methods she had available to handle troublesome situations on the bus, which included procedures for notifying the police.

The jury returned a verdict finding the bus driver negligent in her exercise of care for the safety of her passenger, Mark Finken, and finding that negligence a cause of his injuries. The jury awarded $7,000 to Mark for his pain and suffering, and $650 to his mother and $350 to his father for loss of society and compan-

ionship. Additionally, the court on its own finding awarded $101 for actual medical expenses. The County brought motions after verdict on each of the issues now on appeal and each was denied.[1]

The County and Transport first contend that service of the notice of claim on Transport did not satisfy the requirements of sec. 893.80(1)(b), Stats., which provides in relevant part:

(1) No action may be brought or maintained against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or agency thereof . . . unless:

. . . .
(b) A claim containing the address of the claimant and an itemized statement of the relief sought is presented to the appropriate clerk or person who performs the duties of a clerk or secretary for the defendant fire company, corporation, subdivision or agency and the claim is disallowed.

They argue that the holding in *Zinke* requires service on the county clerk for Milwaukee County before suit may be brought against either Transport or the County. We disagree.

██

Section 893.80(1)(b), Stats., allows an action upon service of the notice of claim on the "clerk or person who performs the duties of a clerk . . . for the . . . corporation, subdivision *or agency* . . . ." (Emphasis added.) The Finkens duly served the managing agent for Transport with a timely notice of claim, which was not challenged for form or content. In their answer, Transport and the County admit that Transport is a municipal corporation, and both argued in *Zinke* that it is an agency of the County. After receiving the

---

[1] One of the motions after verdict sought reconsideration of the denial of summary judgment.

notice of claim, Transport wrote to the Finkens' attorney stating, "[s]ince [Transport] is operating agent of the transit system for Milwaukee County, please direct future correspondence to this office." There being no question as to Transport's status as an agency of the County, we hold that service on its managing agent of a satisfactory notice of claim met the requirements of sec. 893.80 (1) (b).[2]

Our holding compels us to distinguish *Zinke,* on which the County and Transport rely. *Zinke* does not hold, as

[2] It might be suggested, however, that in order to proceed against the County as a named defendant, the statute requires service of a separate notice of claim on the county clerk. Such a proposition would be based on statutory ambiguity, and we would then resort to interpretation to ascertain the legislative intent. *See Lemon v. Federal Ins. Co.,* 107 Wis. 2d 351, 356, 320 N.W.2d 33, 35–36 (Ct. App. 1982), *aff'd,* 111 Wis. 2d 563, 331 N.W.2d 379 (1983). In such an event we would construe the statute to avoid an absurd or unreasonable result. *Ball v. District No. 4, Bd. of Educ.,* 115 Wis. 2d 555, 563, 341 N.W.2d 707, 712 (Ct. App. 1983). Arguendo, we would deem it unreasonable to construe sec. 893.80 (1) (b), Stats. to require service of a duplicate notice of claim on the municipal corporation when its agency, which for other purposes has been judicially acknowledged as such, has been properly served. Such a requirement would impose a needless procedural step and serve no practical purpose. With the agency's receipt of the notice, the intent of the statute to provide warning prior to any lawsuit would be satisfied. Only through extreme negligence would an agency of a municipal corporation fail to notify its principal of a claim for damages, and we would not read into the statute the intent to unreasonably burden claimants with that problem. (In *Zinke v. Milwaukee Transport Services, Inc.,* 99 Wis. 2d 506, 510, 299 N.W.2d 600, 602 (Ct. App. 1980), the record indicated that the County had an agreement with Transport to indemnify it for any uninsured liability arising out of operations of the transportation system. Such an agreement underscores the alignment of interests between Transport and the County and demonstrates why, in this case, notice to Transport would surely have resulted in notice to the County.)

they contend, that any lawsuit based on Transport's acts or omissions is maintainable only if the plaintiff serves a notice of claim on the county clerk. *Zinke* merely holds that in motor vehicle accident cases involving transit system buses, sec. 345.05, Stats., requires a notice of claim to the County prior to commencing suit because the County "owned and operated" the buses, as that phrase is intended in sec. 345.05(2). 99 Wis. 2d at 510–11, 299 N.W.2d at 603. Thus, our statement that notice of claim should go to the county clerk derives from the separate statutory provisions governing only motor vehicle accidents.[3] Where the action is not based on a motor vehicle accident, *Zinke* has no application.

Transport and the County also seek reversal of the jury's findings of negligence and causation. Numerous cases in this court and our supreme court set forth the standard for review of a jury's findings: If there is any credible evidence which, when reasonably viewed, and considered in the light most favorable to the verdict, fairly admits an inference which supports the findings, neither the trial court nor this court may change the findings. *Johnson v. American Family Mut. Ins. Co.,* 93 Wis. 2d 633, 644, 287 N.W.2d 729, 735 (1980). Any supporting evidence other than mere conjecture or incredible evidence meets the standard. Incredible evidence is evidence in conflict with the uniform course of nature or with fully established or conceded facts. *Wis. Natural Gas v. Ford, Bacon & Davis Constr.,* 96 Wis. 2d 314, 338, 291 N.W.2d 825, 837 (1980).

[3] Furthermore, the issue before us here, whether notice of claim to Transport sufficed, was never addressed in *Zinke*. The plaintiffs in *Zinke* failed to serve a notice of claim on anyone prior to suit, under the theory that Transport was a private entity.

In determining whether Transport's employee was negligent, the trial court adequately informed the jury of the duty of care charged to Transport as a common carrier. That duty, briefly, is to use reasonable care to prevent an act by a passenger if the carrier can reasonably anticipate that the passenger might injure another by that act. *See Hamed v. County of Milwaukee,* 108 Wis. 2d 257, 271, 321 N.W.2d 199, 207 (1982).

Our review of the record discloses credible testimony, and reasonable inferences which may be derived from it, to sustain the jury's findings of negligence and causation. Oglesby and Finken both testified that the group of youths was boisterous to an extreme. Both saw several youths enter through the windows, an act observable by the driver through her outside rearview mirrors. Oglesby sensed trouble as soon as the youths boarded. During the assault, Oglesby signaled the driver by pulling the buzzer cord, and saw her watching the back of the bus in her rearview mirror. The jury could reasonably infer from this testimony that the bus driver had reason to anticipate an act by the youths directed at other passengers or, at the very least, had reason to know during the course of the assault that one of her passengers was experiencing trouble. In either case, the jury could reasonably find that her failure to act before or during the assault was negligent and that her negligence caused the injuries to Mark Finken. It was reasonable to infer, for example, that the assault would not have occurred had the driver ordered the youths off the bus for their rowdiness, warned them, or notified them she was summoning the police. That the jury chose to believe the boys' testimony and not the bus driver's is its prerogative and its credibility determination will not be disturbed on appeal. *See Thompson v. Village of*

*Hales Corners,* 115 Wis. 2d 289, 318, 340 N.W.2d 704, 718 (1983).

The next issue raised is whether the $7,000 awarded Mark for his pain and suffering was excessive or the result of perversity. To reverse for excessiveness, where the trial court has sustained the verdict, we "must be able to say that there is such a complete failure of proof that the verdict must be based on speculation." *Coryell v. Conn,* 88 Wis. 2d 310, 315, 276 N.W.2d 723, 726 (1979). The test is otherwise described as whether the result shocks the judicial conscience. *Id.* at 316, 276 N.W.2d at 726. Here, there was credible testimony to support the award, and we cannot say it was based on speculation. Mark testified to his fairly severe short-term suffering and his lingering problems with headaches and blurring in one eye. Additionally, it was not unreasonable to find from the testimony that Mark suffered severe emotional effects from the assault. That a severe beating suffered by a twelve-year old boy at the hands of several older youths might have caused profound emotional suffering is not outside the realm of ordinary experience. Therefore, it was not necessary to provide expert testimony to support Mark's claim. *See Drexler v. All American Life & Casualty Co.,* 72 Wis. 2d 420, 428, 241 N.W.2d 401, 406 (1976).

The trial court found no perversity in the jury's action in awarding $7,000. We will not reverse that conclusion unless we find it to be an abuse of discretion. *Redepenning v. Dore,* 56 Wis. 2d 129, 134, 201 N.W.2d 580, 583 (1972). The County and Transport do not satisfactorily argue any grounds for finding perversity other than the excessiveness of the award. Because there was credible evidence to support the amount awarded for pain and suffering, the trial court did not abuse its discretion by sustaining the verdict.

Finally, we address whether the relatively minor amounts awarded to Mr. and Mrs. Finken for loss of society and companionship were excessive. Both parents provided credible testimony that Mark's personality was markedly changed since the assault, resulting in family disputes and his withdrawal from communication and activities with his parents. This testimony constitutes credible evidence to support the awards of $650 and $350 to Mark's mother and father, respectively.

To summarize our decision, we conclude that service of the notice of claim on Transport met the jurisdictional prerequisite of sec. 893.80(1)(b), Stats. The judgment is affirmed because there is credible evidence to support the jury's findings of negligence and causation and its awards for damages, and the trial court did not abuse its discretion by failing to find perversity.

*By the Court.*—Judgment affirmed.