Richard G. SCULLION and Teresa Scullion, husband and wife, Richard M. Scullion, Plaintiffs-Respondents-Cross-Appellants,

v.

WISCONSIN POWER & LIGHT COMPANY, Defendant-Appellant-Cross-Respondent.

Court of Appeals

*No. 98–3221. Submitted on memoranda March 2, 2000.—Decided May 18, 2000.*

2000 WI App 120

(Also reported in 614 N.W.2d 565.)

On behalf of the defendant-appellant-cross-respondent, the cause was submitted on the briefs of *Mark S. Henkel* and *Jenifer D. Binder* of *First Law Group S.C.* of Stevens Point.

On behalf of the plaintiffs-respondents-cross-appellants, the cause was submitted on the briefs of *Sheila Stuart Kelley* and *Christopher D. Stombaugh* of *Kopp, McKichan, Geyer and Skemp, LLP* of Platteville.

Before Vergeront, Roggensack and Deininger, JJ.

¶ 1.   VERGERONT, J.   This is a motion for relief from a circuit court order partially staying the execution of a money judgment for damages pending appeal, and imposing various conditions on the receipt of a portion of the judgment amount pending appeal. We first decide that the four factors employed by the supreme court in *State v. Gudenschwager*, 191 Wis. 2d 431, 529 N.W.2d 225 (1995), do not provide adequate guidance to the circuit court when the judgment sought to be stayed pending appeal is solely a money judgment. We therefore adopt a different standard, which we explain more fully in this opinion. We then conclude the circuit court did in substance apply the standard we adopt and did properly exercise its discretion. We therefore deny the motion.

### BACKGROUND

¶ 2.   Richard G. Scullion (Rick), Teresa Scullion and Richard M. Scullion (Dick, Rick's father) sued Wisconsin Power & Light Company (WPL) alleging that stray voltage had damaged their dairy farm operation. Claims of negligence, nuisance and treble damages under WIS. STAT. § 196.64 (1997–98)[1] were tried to a jury. The jury returned a verdict that WPL was negligent and had created a nuisance, causing damages to Dick in the total amount of $5,000 and to Rick and Teresa in the total amount of $250,000. The jury found Rick and Teresa were 30% contributorily negligent, Dick was not contributorily negligent, and WPL had failed to provide adequate service in a wanton, willful and reckless manner—the predicate for treble dam-

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

ages under § 196.64. After deciding the post-verdict motions, the court entered judgment against WPL in favor of Teresa for $262,500, plus interest and taxable costs; in favor of Rick for $262,500,[2] plus interest and costs; and in favor of Dick for $15,000, plus interest and costs.

¶ 3. WPL moved for a stay of execution of the judgment pending appeal, and the circuit court granted the motion. The circuit court stated in its order that "meritorious issues exist for consideration on appeal in this complex case, and that irreparable damage is likely to be suffered by [WPL] if a stay is not issued pending appeal." The transcript of the court's oral decision reflects that by irreparable damage the court meant that if WPL were required to pay the Scullions at this time and were to prevail on appeal, it might not be able to obtain that money back from the Scullions. The court found no need for WPL to post a bond because there was no question it had the ability to pay the judgment plus accumulated interest if it were not successful on appeal.

¶ 4. Teresa and Rick moved this court to lift the stay, contending WPL had not demonstrated that it would likely succeed on appeal, loss of money did not constitute irreparable injury to WPL, and the court had not considered the harm to the Scullions' dairy operation if the judgment were not paid now. WPL opposed the motion, asserting that the circuit court had properly exercised it discretion in granting the stay. The parties agreed the *Gudenschwager* factors were applicable, but disagreed whether the court had correctly applied them.

---

[2] The $262,500 judgment amount awarded separately to Rick and to Teresa equals 70% of $125,000 (half of the verdict for Rick and Teresa together) multiplied by three.

¶ 5. On September 17, 1999, we issued an order holding the motion to lift the stay in abeyance and remanding to the circuit court for further proceedings. We stated in our order, citing *Gudenschwager*, 191 Wis. 2d at 440:

> A stay pending appeal is appropriate where the moving party: (1) makes a strong showing that it is likely to succeed on the merits of the appeal; (2) shows that, unless a stay is granted, it will suffer irreparable injury; (3) shows that no substantial harm will come to other interested parties; and (4) shows that a stay will do no harm to the public interest.

These are interrelated factors that must be balanced together. *See id.* We concluded we were unable to determine whether the circuit court had properly exercised its discretion and remanded to permit the circuit court to consider the *Gudenschwager* factors on the record.

¶ 6. Upon remand, the circuit court heard testimony from Rick that the income from milk, after assignments and other deductions from the milk checks, was only $4,000 from March 18, 1999, to the date of the hearing (October 15, 1999), because they now had only thirty-four cows and were milking only twenty-two. In order to meet expenses, including the WPL bills for power, he had been selling off the young stock, which is destroying the future of the operation. Teresa was working off the farm and they had borrowed $4,000 from Rick's father. Another interest payment on a large loan was due and the farming operation was not able to get more financing from the bank. The court then elicited from Rick that the debt was $350,000, approximately $175,000 to $190,000 owed on mortgages on the real estate; the farm was purchased

for $225,000 in 1984; and the value of machinery was approximately $75,000 to $100,000.

¶ 7. After hearing argument from counsel on the *Gudenschwager* factors, the court considered each factor and made the following determinations. First, although WPL had "strong issues" on appeal, "all of which have not previously been addressed by [the Court of Appeals]," WPL had not "made a strong showing it [was] likely to succeed even on those appeal issues." Second, WPL had shown that if it pays the entire judgment, which the Scullions' counsel had represented to be $740,000 including interest on that date, and if WPL were then successful on appeal, it would be able to recover only a small part and would therefore suffer irreparable harm if a stay were not granted. The court rejected the Scullions' argument that simply because WPL was a large company, the loss of this money would not be irreparable harm to it. Third, WPL had not shown there would be no substantial harm to the Scullions if a stay were granted, because the Scullions were suffering a downward economic course, not due to stray voltage now, but due to the "ripple" effect of past stray voltage; and this was going to continue until they "recover[ed] their damages so they can build themselves back to where they were before the stray voltage problem occurred." Fourth, WPL had shown there would be no harm to the public if a stay were granted.

¶ 8. Balancing those factors, the court explained, if WPL paid the Scullions $262,500 now, with certain court-imposed conditions pending appeal, then WPL would be protected, to a large extent, if not completely; and the Scullions would be able to mitigate any present effect of the past stray voltage problems and re-establish a viable dairy farm. The court ordered these

conditions: the Scullions must use the $262,500 to pay off their farm mortgages and debts, must not incur other debts against the real estate, and must give WPL a first mortgage lien on the real estate to protect its payment to the Scullions, in the event WPL is successful on the appeal. The court observed that the $262,500 approximated the amount of compensatory damages the jury had found, and it was not necessary to provide the Scullions now with the full treble damages in order to prevent harm to them. The court excluded from security the farm's personal property, such as machinery and livestock, because the Scullions would need some collateral to borrow from the bank. The court entered an order for a partial stay, containing these terms and additional terms for the payment and security of the $262,500.

¶ 9.   The Scullions renewed their motion to lift the stay—now a partial stay—pending the appeal. They asserted the circuit court had gone beyond our directive for proceedings on remand and, since WPL had not established two of the four *Gudenschwager* factors, WPL was not entitled to a stay. WPL responded that the court had properly exercised its discretion in ordering a partial stay on the terms.

## DISCUSSION

*Adoption of Standard for Stay of Money Judgment*

¶ 10.   We address first the question whether the *Gudenschwager* factors apply when a stay pending appeal of a money judgment is sought. At the outset we acknowledge that, had we examined this question when we first reviewed the Scullions' motion to lift the stay, we would have provided more guidance to the court and the parties on remand. However, it was not

until we were presented with the Scullions' renewed motion concerning the order for a partial stay that we recognized that the *Gudenschwager* factors—which are the factors used by federal courts to decide whether the grant or denial of a permanent injunction should be stayed pending appeal, *see Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d. 150, 153 (6th Cir. 1991) (cited in *Gudenschwager*, 191 Wis. 2d at 440)—do not adequately account for all factors relevant when a stay is requested solely for a money judgment.

¶ 11.  We asked the parties to provide additional argument addressing whether the *Gudenschwager* factors apply when an appellant seeks a stay of a money judgment, and if they do not, what test should be applied, considering federal law if there were no Wisconsin law on point. In their briefs in response, both parties agreed the *Gudenschwager* factors are the proper test when a stay of a money judgment is sought. Although these briefs were helpful, our own research has led us to a different conclusion. We conclude that the *Gudenschwager* factors, derived as they are from the standard for injunctive relief, do not encompass all the factors that may be relevant when a stay of a money judgment is sought. However, we do not follow the federal law with respect to stays for money judgments because the Wisconsin statute governing stays pending appeal, WIS. STAT. § 808.07, is significantly different in this regard from the comparable federal rule, FED. R. CIV. P. 62. Instead, we adopt a standard that borrows from *Gudenschwager*, but also takes into account § 808.07 and its legislative history, and the specific

interests involved when a money judgment is appealed.[3]

¶ 12.   WISCONSIN STAT. § 808.07 authorizes the circuit court to stay the enforcement of a judgment, preserve the existing state of affairs and the effectiveness of the judgment subsequently to be entered, and condition any such relief on the filing of a bond; but it does not define the terms upon which the circuit court either must or may do these things.[4] Under WIS. STAT. RULE 809.12 persons aggrieved by the circuit court's

---

[3] We attempted to find guidance in cases from the courts of other states, but the cases we found have, in general, not been useful because of the difference in wording between WIS. STAT. § 808.07 and the statutes of the other states. We did, however, find some of the reasoning in *Stacke v. Bates*, 562 N.E.2d 192, 195 (Ill. 1990), helpful in distinguishing between the factors relevant to a stay when an injunction is involved and when payment of money is involved.

[4] WISCONSIN STAT. § 808.07 (1997–98) provides:

**Relief pending appeal.** (1) EFFECT OF APPEAL. An appeal does not stay the execution or enforcement of the judgment or order appealed from except as provided in this section or as otherwise expressly provided by law.

(2)   AUTHORITY OF A COURT TO GRANT RELIEF PENDING APPEAL.

(a)   During the pendency of an appeal, a trial court or an appellate court may:

1.   Stay execution or enforcement of a judgment or order;

2.   Suspend, modify, restore or grant an injunction; or

3.   Make any order appropriate to preserve the existing state of affairs or the effectiveness of the judgment subsequently to be entered.

(am)   During the pendency of an appeal, the trial court may hear and determine a motion filed under s. 806.07.

(b)   Except as provided in s. 655.27 (5) (a) 3., relief under this subsection may be conditioned upon the filing of an undertaking in the trial court.

(3)   UNDERTAKING FOR COSTS. An undertaking for costs is not required unless specifically required by statute, or, except as provided in s. 655.27 (5) (a) 3., by the trial court acting in its discretion.

order granting relief under § 808.07 may, as the Scullions have done, file a motion in this court for relief from the circuit court's order, but RULE 809.12 does not indicate what standard we are to apply in deciding that motion.[5]

¶ 13.   In *Gudenschwager*, the supreme court considered the circuit court's order denying the State's motion for a stay of the release of an alleged sexual predator while the State appealed the circuit court's

(4)   PROCEEDINGS AGAINST A SURETY. A surety on an undertaking is subject to the jurisdiction of the trial court and irrevocably appoints the clerk of that court as the surety's agent for service of any papers affecting his or her liability on the undertaking. A person may seek to enforce the surety's liability by filing a motion in the action or proceeding in the trial court in which the undertaking was filed.

(5)   PUBLIC OFFICIALS. A person or agency suing or being sued in an official public capacity is not required to execute an undertaking as a condition for relief under this section unless, except as provided in s. 655.27 (5) (a) 3., required by the court in its discretion.

(6)   SURETIES ON UNDERTAKINGS. A surety shall file with the undertaking an affidavit that the surety has a net worth in property within this state not exempt from execution which exceeds the amount of the undertaking, except as provided in s. 632.17 (2). The respondent may by motion object to the sufficiency of a surety within 10 days after service of a copy of the undertaking.

[5] WISCONSIN STAT. RULE 809.12 provides:

A person seeking relief under s. 808.07 shall file a motion in the trial court unless it is impractical to seek relief in the trial court. A motion in the court must show why it was impractical to seek relief in the trial court or, if a motion had been filed in the trial court, the reasons given by the trial court for its action. A person aggrieved by an order of the trial court granting the relief requested may file a motion for relief from the order with the court. A judge of the court may issue an ex parte order granting temporary relief pending a ruling by the court on a motion filed pursuant to this rule. A motion filed in the court under this section must be filed in accordance with s. 809.14.

ruling that the sexual predator statute was unconstitutional.[6] The court set out the four factors as we have quoted them above, citing *Leggett v. Leggett*, 134 Wis. 2d 384, 385, 396 N.W.2d 787 (Ct. App. 1986), the case in which we first adopted these factors based on federal law.[7] The court added this language from *Griepentrog*:

[6] The court in *State v. Gudenschwager*, 191 Wis. 2d 431, 439–40, 529 N.W.2d 225 (1995), first overruled our holding in *Faust v. Faust*, 178 Wis. 2d 599, 602, 501 N.W.2d 810 (Ct. App. 1993), that we are to employ a de novo standard of review; and, relying on federal cases decided under FED. R. APP. P. 8(a), it held that we should review the circuit court's decision to grant or deny a stay pending appeal under an erroneous exercise of discretion standard. That federal rule is the counterpart to WIS. STAT. § 809.12 and provides, in pertinent part:

**Rule 8. Stay or Injunction Pending Appeal.**

**(a) Stay Must Ordinarily Be Sought in the First Instance in District Court; Motion for Stay in Court of Appeals.** Application for a stay of the judgment or order of a district court pending appeal, or for approval of a supersedeas bond, or for an order suspending, modifying, restoring or granting an injunction during the pendency of an appeal must ordinarily be made in the first instance in the district court. A motion for such relief may be made to the court of appeals or to a judge thereof, but the motion shall show that application to the district court for the relief sought is not practicable, or that the district court has denied an application, or has failed to afford the relief which the applicant requested, with the reasons given by the district court for its action.

FED. R. APP. P. 8(a) (1995). This rule was amended in December 1998, but the amendment does not affect this appeal.

[7] In *Leggett v. Leggett*, 134 Wis. 2d 384, 385, 396 N.W.2d 787 (Ct. App. 1986), we considered a motion filed in this court for a stay of enforcement of a judgment of divorce insofar as it related to property division, after a circuit court had denied the motion. We turned to FED. R. APP. P. 8(a) for guidance on the standard we should apply, because the Judicial Council Committee Note, 1978, stated that WIS. STAT. RULE 809.12 was based on that rule, and we adopted the four factors from *Reserve Mining Co. v.*

508

"These factors are not prerequisites but rather are interrelated considerations that must be balanced together." *Gudenschwager*, 191 Wis. 2d at 440. The court then examined each of the four factors and concluded that the presumption of constitutionality of every statute, the likelihood that Gudenschwager would commit future acts of sexual violence, the public interest in being protected from such conduct and the inadequacy of the release conditions to fully protect the public, all outweighed the harm to Gudenschwager of being held in custody pending appeal. *See id.* at 441–43.

¶ 14. The federal cases cited in *Leggett* and *Gudenschwager—Reserve Mining* and *Griepentrog—*concern motions for the stay of an injunction pending appeal. Under FED. R. CIV. P. 62, the federal counterpart to WIS. STAT. § 808.07, there is a distinction between the granting of relief pending appeal when an appeal is taken from an interlocutory or final judgment granting, dissolving or denying an injunction, and when an appeal is taken from a money judgment. In the former case, the court may in its discretion suspend, modify, restore or grant an injunction pending appeal upon such terms as to bond or otherwise for the security of the rights of the adverse party, *see* FED. R. CIV. P. 62(c), and the courts then apply the *Gudenschwager* factors in deciding whether to exercise that discretion.[8] *See, e.g., Griepentrog*, 945 F.2d at 153.

---

*United States*, 498 F.2d 1073, 1076–77 (8th Cir. 1974). We concluded the moving party had failed to show that any of the factors justifying relief pending appeal were present, and we denied the motion. *See id.*

[8] FEDERAL R. CIV. P. 62(c) provides:

> **Injunction Pending Appeal.** When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying

However, when the judgment appealed from does not involve the granting or denying of an injunction, but only a money judgment, the appellant is entitled to a stay of the execution of the judgment pending appeal as a matter of right upon the posting of a supersedeas bond approved by the court. *See* FED. R. CIV. P. 62(d);[9] 11 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2905 (1995). Federal courts have discretion in deciding whether an appellant may obtain a stay of a money judgment without posting a full supersedeas bond, *see, e.g., Morgan Guar. Trust Co. v. Republic of Palau,* 702 F. Supp. 60 (S.D.N.Y. 1988);[10]

an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party. If the judgment appealed from is rendered by a district court of three judges specially constituted pursuant to a statute of the United States, no such order shall be made except (1) by such court sitting in open court or (2) by the assent of all the judges of such court evidenced by their signatures to the order.

[9] FEDERAL R. CIV. P. 62(d) provides:

**Stay Upon Appeal.** When an appeal is taken the appellant by giving a supersedeas bond may obtain a stay subject to the exceptions contained in subdivision (a) of this rule. The bond may be given at or after the time of filing the notice of appeal or of procuring the order allowing the appeal, as the case may be. The stay is effective when the supersedeas bond is approved by the court.

[10] WPL cited *Morgan Guaranty Trust Co. v. Republic of Palau,* 702 F. Supp. 60 (S.D.N.Y. 1988), and two other federal cases, *Texaco Inc. v. Pennzoil Co.,* 784 F.2d 1133, 1154 (2nd Cir. 1986), 481 U.S. 1 (1987), *rev'd on other grounds,* and *Federal Insurance Co. v. County of Westchester,* 921 F. Supp. 1136 (S.D.N.Y. 1996), in support of its position that the *Gudenschwager* factors are applied under federal law when the appeal is solely from a money judgment. However, all are cases in which the appellant sought a stay without a bond or a full

510

*H.C.B. Contractors v. Rouse & Assocs.*, 168 F.R.D. 508 (E.D.Pa. 1995); but they do not have the discretion to deny stay of a money judgment if the required bond is posted.

¶ 15.   Although we may look to federal cases for guidance when the applicable state law is based on federal law, *see Leggett*, 134 Wis. 2d at 385, there are substantial differences in the language of WIS. STAT. § 808.07(2) and FED. R. CIV. P. 62(c) and (d), including many fewer details in the Wisconsin rule than in the federal rule. Before relying on the federal cases, therefore, we look to the legislative history of our rule to determine the extent to which the legislature intended to pattern our rule after the federal rule.

¶ 16.   This history shows that WIS. STAT. § 808.07 was enacted as part of the legislation establishing the Court of Appeals. *See* Laws of 1977, ch. 187, § 117. Previously, various statutes had provided for an automatic stay of the execution of a money judgment upon the posting of a bond, with the most recent such statute prior to 1977 being modeled on FED R. CIV. P. 62.[11] The Judicial Council Committee, which concurrently examined the statutes on appellate procedure,

---

bond and without a showing that it would be able to pay the judgment if unsuccessful on appeal. These cases therefore do not provide guidance for the considerations in granting a stay of a money judgment when, as here, the court found there is no need for a bond because there is no risk WPL will not be able to pay the judgment plus interest if unsuccessful on appeal.

[11] *See Wilhelm v. Hack*, 234 Wis. 213, 220, 290 N.W. 642 (1940); *Wisconsin Rules of Civil Procedure*, 67 Wis. 2d 585, 761 (renumbering ch. 274 to ch. 817); WIS. STAT. § 817.17 (1975); WIS. STAT. § 806.08 (1975); Memorandum to the Judicial Council's Appellate Practice and Procedure Committee on "Undertaking—Supersedeas" (1976).

reviewed the common law of undertakings pending appeal and the policies underlying those;[12] and a proposal for a rule staying the execution of a money judgment upon the filing of an undertaking meeting certain conditions was presented to the committee. However, the legislation ultimately introduced and enacted—§ 808.07—does not contain such a provision, but instead merely authorizes the court to condition a stay upon the filing of an undertaking. WIS. STAT. § 808.07(2)(b). The Legislative Council Note, 1977, WIS. STAT. ANN. § 808.07 (West 1994), indicates that this subsection (2) is "intended to recognize the broad discretionary authority in the courts to grant appropriate relief."

¶ 17.  We conclude the legislature did not intend to follow the federal rule that one appealing a money judgment has the right to a stay upon filing an undertaking approved by the court, but rather intended to commit to the circuit court's discretion whether to order a stay, even if the appellant is willing and able to file an undertaking fully protecting the respondent. However, we also conclude that an appellant's willingness and ability to file such an undertaking, or to

---

[12] At common law, and in the absence of a positive statutory provision to the contrary, an appeal operated as an automatic stay of the judgment appealed from. The underlying policy was that, because there is a right to appeal, a judgment did not have to be paid until the appeal was exhausted, to make sure the judgment was not mistaken. Statutory requirements for security pending appeal were adopted to prevent appeals as a delay tactic, and to make sure the respondent could ultimately collect if the appeal were unsuccessful. *See* Memorandum from "ESA" on "Judicial Council—Appellate Practice and Procedure Committee—Supersedeas—Undertaking on Appeal" (July 30, 1976) (on file with the Wisconsin State Law Library).

otherwise provide proof that the respondent is fully protected if the appeal is unsuccessful, is an important factor for the court to consider in deciding whether to grant a stay. Because the *Gudenschwager* standard does not specifically address this and other factors relevant to a stay of the execution of money judgments, we adopt the following standard for the circuit courts to apply in considering a motion to stay a money judgment pending appeal.[13]

■

¶ 18.  First, as under *Gudenschwager*, the court must consider the issues the appellant is appealing and the likelihood of success on those issues. Bearing in mind that the motion for a stay, in most instances, is addressed to the very individual who has just made the rulings the appellant is challenging on appeal, it is not to be expected that a circuit court will often conclude there is a high probability that it has just erred. However, that is not required for a stay of a judgment granting or denying an injunction, and, similarly, we do not require that for a stay of a money judgment. The "movant need not always establish a high probability of success" on appeal, but it must be more than a "mere possibility." *Gudenschwager*, 191 Wis. 2d at 441 (citing *Griepentrog*, 945 F.2d at 153).[14]

---

[13] The parties debate whether *Gudenschwager* establishes a standard, or merely provides a set of factors to consider. To avoid confusion we use "standard" to encompass both the factors that are to be considered, and the directions concerning how the court is to analyze those factors.

[14] Although this first factor is formulated in the federal case relied on in *Leggett*, 134 Wis. 2d at 385, as a "strong showing that [the moving party] is likely to succeed on the merits of the appeal," *see Reserve Mining*, 498 F.2d at 1076, and although both *Leggett* and *Gudenschwager* use this same phraseology,

¶ 19. The standard of appellate review is one aspect of the likelihood of success on appeal. When the decision is entirely discretionary, and the circuit court applied the correct legal standard to the facts and explained its reasonings, the deference given such decisions makes reversal more difficult. *See Faust v. Faust,* 178 Wis. 2d 599, 603, 501 N.W.2d 810 (Ct. App. 1993) (*overruled on other grounds, State v. Gudenschwager,* 191 Wis. 2d 431, 529 N.W.2d 225 (1995) (see footnote 6)). Reversal of factual findings is even less likely. *See* WIS. STAT. § 805.17(2). On the other hand, because of the de novo standard of review for legal issues, if there is not clear and binding precedent on point, and if the circuit court concludes the issue is a close one or a complex one, the likelihood of success on appeal will generally be greater. In the same vein, applicable legal presumptions may provide some gauge of the likelihood of success on appeal. *See Gudenschwager,* 191 Wis. 2d at 441.

the phraseology in *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog,* 945 F.2d 150, 153 (6th Cir. 1991)—"the likelihood that the party seeking the stay will prevail on the merits of the appeal"—is more consistent with the actual application of this standard at the stage of a stay pending appeal. Unlike a preliminary injunction from which the four factors are borrowed, a stay pending appeal is sought after the circuit court has fully considered the merits; the movant may therefore have greater difficulty demonstrating a likelihood of success on the merits. *See id.,* at 153. For that reason, a high probability of success on appeal is not necessarily required for a stay; rather, the likelihood of success is weighed along with the other factors, and the degree of likelihood of success that justifies a stay in a particular case will depend on the relative strength of the other factors. *See id.,* at 153–54; *Gudenschwager,* 191 Wis. 2d at 441 (citing *Griepentrog*).

¶ 20.   Second, the circuit court must consider the need to ensure the collectibility of the judgment and the accumulated interest if the appellant does not succeed on appeal. As we have indicated above, consideration of this factor addresses the appellant's ability to file an undertaking or otherwise provide security that the court determines is sufficient, or to satisfy the court that, even without an undertaking or security, there is no risk the appellant will not be able to pay the full judgment plus accumulated interest and costs.

¶ 21.   Third, the court must consider the interests of the appellant in securing the fruits of the appeal if it is ultimately successful. The inquiry here is whether the appellant, if ultimately successful, will be able to recover the money paid in execution of the judgment and, if so, the time and effort involved in such recovery. The appellant need not show that the inability to recover such money as a successful appellant will cause it irreparable harm; rather, the underlying principle here is that the right to appeal a money judgment is not a meaningful one if the money must be paid pending appeal and cannot later be recovered.

¶ 22.   A fourth factor may be relevant in some cases—the harm to the respondent that may result if the judgment is not paid until the completion of an unsuccessful appeal. In most cases the undertaking, other security or demonstrated proof of financial ability to ultimately pay the judgment plus interest for the delay in paying the judgment, will make the ultimately successful respondent whole. *Cf. Management Computer Servs. Inc. v. Hawkins*, 224 Wis. 2d 312, 331, 592 N.W.2d 279 (Ct. App. 1998). However when, as in this case, the respondent asserts that delay in execution of

the judgment will cause a harm that cannot be remedied by the later collection of the judgment plus interest after an unsuccessful appeal, the court must consider this factor. In evaluating this harm, the circuit court should consider the substantiality of the harm asserted, the likelihood of its occurrence, the adequacy of the proof provided and whether it truly is a harm that cannot be remedied by the later collection of the judgment plus interest.

¶ 23.   We list as a fifth factor the interest of the public, although in the usual money judgment appeal that is not a relevant consideration and will not weigh either in favor of or against a stay.

¶ 24.   We emphasize that this list is not intended to be exclusive. It would not be in keeping with the wide discretion the legislature gave the circuit courts under WIS. STAT. § 808.07(2) to prevent the court from considering any other factors it considered relevant in the circumstances of a particular case. We conclude, however, that a proper exercise of discretion requires the circuit court to consider at least the first three factors in every case, and the fourth and fifth factors whenever they are relevant.

¶ 25.   Finally, and again borrowing from *Gudenschwager*, the circuit court must weigh the strength of the relevant factors in deciding whether to grant a stay and upon what conditions. It is not a matter of one party "prevailing" on more factors than the other party but on the relative and competing weight that the circuit court, in its discretion, accords to each relevant factor based on the record before it.[15] For

---

[15] We observe that the statement of the four factors as phrased in *Griepentrog*, 945 F.2d at 153, is more consistent with balancing than the statement of the four "showings" that must be made in *Reserve Mining*, 498 F.2d at 1076–77, which is the

example, when there is a small likelihood of success on appeal, the ability of the appellant to file an undertaking or otherwise fully ensure the collectibility of the judgment plus interest must be given more weight.

*Application of Standard to this Case*

¶ 26. Although the circuit court on remand followed *Gudenschwager* as we directed, the substance of its analysis, although not the nomenclature, included all the factors relevant under the approach we have just adopted.

¶ 27. The court, both before and after remand, considered the likelihood of WPL's success on appeal, including the complexity of the issues and the lack of appellate precedent. The court did not discuss the issues in detail, referring instead, as did the parties, to

---

phraseology we adopted in *Leggett*, 134 Wis. 2d at 385, and the court in *Gudenschwager*, 191 Wis. 2d at 440, approved.

> These well-known factors are: (1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay.

*Griepentrog*, 945 F.2d at 153. Part of the disagreement between the parties in this case appears to stem from confusion engendered by phrasing the standard in terms of four "showings" joined by the conjunctive "and," as we did in our prior order in this case, quoting *Gudenschwager*. The Scullions contend that *Gudenschwager* requires that each of the four "tests" be met, while WPL contends that the court is to consider the evidence presented on each of the four factors and balance the relative strength of each. We are persuaded that the latter is the approach *Gudenschwager* contemplates, and that is the approach we adopt here. This is consistent with our analysis of the first factor. *See* footnote 14.

the extensive argument during trial and on post-verdict motion. WPL's docketing statement shows that it is appealing these rulings: admitting and excluding evidence, denying the motion to dismiss at the close of plaintiff's case, failing to submit an issue to the jury, failing to properly instruct the jury and denial of a motion for a new trial. WPL identifies questions of law, which we review de novo, with respect to all but the denial of the motion for a new trial. The Scullions do not challenge the circuit court's conclusion that the issues WPL raises on appeal are "strong ones," but points out that the court concluded WPL did not make a "strong showing that it is likely to succeed." As we read the circuit court's comments, it interpreted our reference to this factor, as phrased in *Gudenschwager*, to require a high likelihood of success, but, as we have explained above, that is not necessarily required in order to obtain a stay either under the standard we adopted or under the *Gudenschwager* standard. We understand the circuit court, in using the terms "strong issues" and "meritorious issues for appeal," to have decided that WPL does have a substantial case on one or more of the issues it is raising on appeal. The Scullions do not develop any specific argument explaining why this is not an accurate assessment.

¶ 28. The court also determined the following: (1) there was no risk that WPL could not ultimately pay the judgment plus interest if unsuccessful on appeal; (2) if WPL paid the full judgment now and were subsequently successful on appeal, it would be able to recover only a small part; (3) the Scullions' farming operation would be substantially harmed if a complete stay were granted; (4) the receipt of $262,500 now would enable the Scullions to halt the downward trend and begin to build the farm back up; and (5) the public

518

interest was not implicated. These determinations are supported by the record and the Scullions do not argue otherwise. The Scullions' challenge, rather, is to the court's decision, after considering these factors, to order any stay, even a partial one.

¶ 29.  The Scullions first argue that because WPL has met only two of the four factors, it is not entitled to any stay. We have already addressed the Scullions' argument that WPL did not meet the first factor. Beyond that, this argument is based on a misunderstanding of *Gudenschwager*, which we have already discussed. *See* footnote 14. As is true of the *Gudenschwager* factors, the factors relevant to a stay of a money judgment are not independent tests each of which the movant must independently meet, but, rather, interrelated factors that the court is to weigh.

¶ 30.  The Scullions next argue the court exceeded the scope of its authority on remand by not denying the motion for a stay once it decided there would be harm to the Scullions if a stay were granted. However, our order simply instructed the court to consider all the *Gudenschwager* factors and balance them together. We did not impose any limitation on what the court could decide as a result of the balancing of those factors.

¶ 31.  Finally, we understand the Scullions to argue the court does not have the authority to order a partial stay and to condition that stay on the giving of security for the money paid and on the manner in which that money must be used. However, the Scullions have presented no authority for this position. As we have stated, WIS. STAT. § 808.07 gives the circuit court a wide range of discretion in deciding whether to grant a stay, and, if so, under what conditions. Certainly the authority to grant or deny a stay of execution

of a money judgment implies the authority to grant a partial stay. And the court is expressly given the authority to "[m]ake any order appropriate to preserve the existing state of affairs or the effectiveness of the judgment subsequently to be entered." WIS. STAT. § 808.07(2)(a)3.

¶ 32.   The Scullions contend the court's order violates contracts between the Scullions and their attorneys because the amount awarded in the judgment is subject under those contracts to liens for attorney fees and costs. The circuit court rejected this argument, explaining that it was considering the Scullions' needs now, and if they were successful on appeal, the remainder of the damages awarded under the judgment plus interest would be sufficient to cover costs and attorney fees. In the absence of any authority to the contrary, we agree with the circuit court that it need not take into account the Scullions' contracts with its attorneys in deciding upon the appropriate relief pending appeal: the court properly focused on the interests of the litigants and on protecting their competing interests.

¶ 33.   The Scullions also assert the court's order violates contracts between the Scullions and lending institutions, but do not further elaborate. Since they did not make this argument in the circuit court, we are unable to arrive at a sufficient understanding of what this argument entails. We therefore decline to address it. More specifically, we do not address the validity of the mortgage,[16] which the court ordered the Scullions to execute as security for WPL's partial payment of the

---

[16] *See Security Nat'l Bank v. Cohen*, 41 Wis. 2d 710, 714, 165 N.W.2d 140 (1969); *Harvest Sav. Bank v. ROI Inv.*, 209 Wis. 2d 586, 592, 563 N.W.2d 579 (Ct. App. 1997) (holding a valid mortgage requires an underlying debt).

judgment, or the imposition of any of the other conditions set by the circuit court, because the Scullions have not sufficiently raised arguments concerning them.

*By the Court.*—Motion for relief from partial stay pending appeal denied.