BLEYER and wife, Respondents, v. GROSS and another, Appellants.

*February 6—March 5, 1963.*

306

For the appellants there was a brief by *James H. Van Wagenen* of Stevens Point.

For the respondents there was a brief by *John J. Haka* of Stevens Point, attorney, and *William L. McCusker* of Madison of counsel, and oral argument by *Mr. McCusker*.

WILKIE, J. The only issue on this appeal is whether there was credible evidence to support the jury's award of $7,500 for future medical expenses on behalf of Mrs. Bleyer.

The rule is well established that a verdict or a finding of a jury will not be set aside or disturbed, "if there is any credible evidence which under any reasonable view fairly admits of an inference that supports the jury's finding." *Van Galder v. Snyder* (1948), 254 Wis. 120, 123, 35 N. W. (2d) 187.[1] "The familiar rule, often declared by this court, that where there is credible evidence to support a finding of a jury we may not disturb it, needs no citation of authorities." *Mossak v. Pfost* (1950), 258 Wis. 73, 75, 44 N. W. (2d) 922. It should be further pointed out, "on review this court must accept the credible evidence most favorable to sustain the verdict." *Dickman v. Schaeffer, supra,* footnote 1, at page 613.

To determine whether or not there was sufficient evidence to support the award for future medical expenses, we must first review the evidence as to the personal injuries of the plaintiff, Patricia Bleyer.

Dr. Erickson examined Patricia the day of the accident. She complained of pain over the left eye, in the neck, shoulder,

[1] See also *Chicago, N. S. & M. R. Co. v. Greeley* (1953), 264 Wis. 549, 555, 59 N. W. (2d) 498; *Dickman v. Schaeffer* (1960), 10 Wis. (2d) 610, 613, 103 N. W. (2d) 922.

chest, left hip, and left knee. He found swelling and discoloration in the area of the upper eye on the left, evidence of a contusion, muscle spasm, tightening of the neck and shoulder area, subjective tenderness over the left shoulder and chest, pain and tenderness with swelling and discoloration over the left hip, and swelling and discoloration of the left knee. Dr. Erickson's diagnosis at this time was that there were contusions in the above-described areas, a whiplash injury to the neck, and an inflammation of the muscles on the left side of the body. X rays were taken a week later, but disclosed no fractures or dislocations. He continually saw her from the date of the accident until two weeks before the trial, in April, 1962. He found that Patricia sustained a permanent partial disability to the left shoulder area, which is "approximately 20 percent of the function of that area of her body," and that this would affect her in the performance of her household chores.

On cross-examination, when asked if the periods of hospitalization and the treatment administered therein were successful, Dr. Erickson said: "The treatment resulted in some improvement," in each of the periods, but that during each time interval between the hospitalization periods, Patricia's injuries had become worse. He admitted that these were residuals. He admitted that the three periods of hospitalization produced no cure. On cross-examination, Dr. Erickson defined her future medical expenses as including "medical treatment, drugs, and hospitalization," and that the drug bill per year would be approximately one third of $183. He testified that there was evidence of muscle spasm and tenderness; that her limitation of motion was "minimal," approximately three–five percent, the least anyone could have. He stated that the partial disability of the left shoulder area of 20 percent did not mean a 20 percent limitation of motion. He further stated that Patricia would complain of pain the rest of her life and that she would use drugs for the rest

of her life, at the same rate she was using them for the three-year period prior to the trial.

Dr. Sheehan examined Patricia for the defendants on October 3, 1961. He stated there was no evidence of head injury; there was a slight scar in the left eyebrow; the expansion of the chest was free and equal; all motions of the neck were free and equal; there was a thickness in the trapezius (upper left spine region); examination of the shoulder muscles showed that they were intact; motion of the left shoulder was "perfectly" normal; there was no muscle spasm in the lower back; reflexes were normal; there was some thickening around the left knee bone. His findings were to the effect that on March 16, 1959, Patricia suffered a swelling and laceration of the left eye, a strain of the back and left shoulder and left back area, and a swelling of the left knee. He stated that the residuals at the present time are principally subjective, with the exception that there is a thickening of the left trapezius muscle in the neck, and a swelling of the left knee. He stated she had developed an anxiety complex. There were no fractures. He testified that she might have pain in the neck with changes of weather and that her knee trouble is what is commonly known as "housemaid's knee."

On the basis of the above medical testimony, Patricia Bleyer was awarded $1,000 for her personal injuries. (The trial court in its instructions regarding Patricia's damages for personal injuries told the jury to include in their award past and future pain and suffering.)

There was specific evidence concerning the expenses incurred by Edward Bleyer for the treatment of his wife during the three-year period from the date of the accident until the time of trial. (1) Dr. Erickson's bill for the period, $237. (2) Prescriptions for drugs, $183. (3) X-ray therapy, $23. (4) Hospitalization from March 3, 1959, to August 12, 1959. Patricia was treated as an outpatient with physio-

therapy, analgesics, and drugs, for muscle relaxation, $186.50. (5) Hospitalization from January 24, 1960, to January 30, 1960, $144.40. (6) Hospitalization from October 17, 1961, to October 20, 1961, $125.80. All of the foregoing treatment was performed to relieve pain and for the purpose of relaxing the muscles.

Other evidence adduced in support of future medical expenses was contained in the following testimony by Dr. Erickson:

"*Q.* [By plaintiffs' attorney] Now, doctor, do you have an opinion as to whether or not Patricia Bleyer will require any future medical treatment? *A.* Yes, I do.

"*Q.* And what is your opinion, doctor? *A.* On the basis of findings and the progress to date, I feel that she will *probably* require continued medication and drugs for the relief of the pain, discomfort, and limitation of motion due to the injury.

"*Q.* Do you know how long this treatment will be required? *A.* I feel that this injury has resulted in permanent disability and partial loss of function of the use of the left shoulder and aggravation of pain by activity, and she will *probably* continue to have these symptoms throughout her life.

"*Q.* Now, doctor, can you estimate what will be the reasonable value of the plaintiff's future medical cost? *A.* Cost of medical care, —.

"Mr. Van Wagenen: [Defendants' attorney] [interposing] : If the court please, I would like to have that with some amount of certainty. I think that question calls for speculation.

"The Court: I don't know whether it does. To a reasonable degree of medical certainty, if you can do that, doctor.

"*A.* On a yearly basis, it would *probably* run *approximately* $200 to $250.

"*Q.* [By plaintiffs' attorney] And could you tell us what factors you have taken into consideration in order to determine to a reasonable degree of medical certainty what treatment and drugs will be required? *A.* On the basis of

the past experience of approximately three-year duration of hospitalization, medical care, and drugs, which she has required to date." (Emphasis supplied.)

Two tests must be met to sustain the jury's award of $7,500 for future medical expenses. (1) Is there expert medical testimony of permanent injuries to Patricia Bleyer, with associated pain and suffering, requiring future medical treatment and the incurring of future medical expenses? (2) Is there expert medical testimony as to the cost of such medical expenses? In both cases the medical testimony must meet the proper standard for receiving expert medical testimony.

In evaluating a $2,000 jury award for future medical expenses, the court, in *Sawdey v. Schwenk* (1958), 2 Wis. (2d) 532, 87 N. W. (2d) 500, stated, at page 537:

"This court in *Diemel v. Weirich* (1953), 264 Wis. 265, 58 N. W. (2d) 651, held that no award of damages for future pain and suffering can be upheld which is not supported by expert medical testimony. We deem that the same rule is applicable in the case of an award for future medical expenses."

An early case in which such expert medical testimony, stated in terms of "probabilities," could not be condemned as speculative or conjectural was *Hallum v. Omro* (1904), 122 Wis. 337, 99 N. W. 1051, where the court stated, at page 344:

"But an interrogatory as to what the probabilities are, or what is likely or liable to be the result as regards permanency of the injury cannot be condemned as speculative or conjectural. This does not militate at all against the doctrine that the ultimate vital fact to be determined is what is reasonably certain to be the result. That is for the jury to determine from all the evidence bearing on the question, including the opinion evidence as to what is probable, likely, or liable to be the case."

In *Unruh v. Industrial Comm.* (1959), 8 Wis. (2d) 394, 99 N. W. (2d) 182, the court held that conclusions of a medical expert witness should amount to an assertion of his professional opinion, and that an opinion expressed in terms of "I feel" or "I believe" is sufficient. See also *Powers v. Allstate Ins. Co.* (1960), 10 Wis. (2d) 78, 86, 102 N. W. (2d) 393.

On the other hand, an expert opinion expressed in terms of a "mere possibility" is insufficient to sustain a finding. *Michalski v. Wagner* (1960), 9 Wis. (2d) 22, 100 N. W. (2d) 354.

Preponderance of probabilities also meets the requisite standard. *Rudy v. Chicago, M., St. P. & P. R. Co.* (1958), 5 Wis. (2d) 37, 45, 92 N. W. (2d) 367.

The expert medical testimony adduced here was not in terms of "possibilities" but "probabilities" and as such there was sufficient competent evidence to support a jury determination that there was permanent injury accompanied by pain which required further treatment. The attending physician, when called upon to testify concerning future medical expenses testified: "On a yearly basis, it would probably run approximately $200 to $250," and that this was, "On the basis of the past experience of approximately three-year duration of hospitalization, medical care, and drugs, which she has required to date."

The case is distinguished from *Baier v. Farmers Mut. Ins. Co.* (1961), 15 Wis. (2d) 111, 114, 112 N. W. (2d) 197, wherein this court sustained the action of the trial court when it held that an award of $10,000 for future medical expenses was not based on "sufficiently definite medical testimony to substantiate the award and was partly based on speculation."

It is also different from *Sawdey v. Schwenk, supra,* where this court held that an award of $2,000 for future medical expenses was excessive where the plaintiff's own physician

testified (p. 537), "that he did not think Sawdey would probably spend much money for further treatment."

The lower court on motions after verdict discussed the difference between the award of $1,000 damages to Patricia Bleyer for her injuries including past and future pain and suffering and the award of $7,500 to Edward Bleyer for future medical expenses on behalf of his wife. The court stated:

". . . we must admit, . . . it is unusual, but I can't see anything irregular about it, and I think there is credible evidence in the record to sustain the jury's finding."

We concur.

*By the Court.*—Judgment affirmed.