Julie L. WEBER and Joshua Weber, Plaintiffs-Respondents,†

WEA INSURANCE CORPORATION, Carefirst of Maryland, Inc., d/b/a Carefirst Blue Cross Blue Shield, and Wisconsin Physicians Insurance Corporation, Involuntary-Plaintiffs,

v.

Angelene WHITE and Farmers Insurance Exchange, Defendants-Appellants.

Court of Appeals

*No. 03–0471. Submitted on briefs September 2, 2003.— Decided October 14, 2003.*

2003 WI App 240

(Also reported in 672 N.W.2d 151.)

† Petition to review granted 12-16-03.

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Michael R. Vescio* of *O'Hagan, Smith & Amundsen, LLC*, Greenfield.

On behalf of the plaintiff-respondent, Julie L. Weber, the cause was submitted on the brief of *Thomas W. Kyle* and *Jonathan P. Groth* of *Pitman, Kyle & Sicula, S.C.*, Milwaukee.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

¶ 1. FINE, J. Angelene White and her insurance company, Farmers Insurance Exchange, appeal from a judgment entered on a jury verdict awarding Julie L. and Joshua Weber $43,242.34. White and Farmers Insurance argue that the trial court erred when it denied their motion to vacate the jury's verdict of $5,000 for future health-care expenses because it was not supported by credible evidence. We agree and reverse in part.

I.

¶ 2. This case began when Angelene White hit the back of Julie L. Weber's car at the intersection of West Brown Deer Road and North 76th Street in the City of

Milwaukee. Weber was taken to Elmbrook Memorial Hospital, where she was diagnosed with a whiplash injury. To treat her injury, Weber underwent physical therapy. When she did not make a full recovery, she began to see George J. Hanacik, Jr., D.C., for chiropractic treatment.

¶ 3. Weber and her husband sued White and Farmers Insurance Exchange. They alleged that White negligently hit Mrs. Weber's car and that, as a result, Mrs. Weber suffered permanent injuries.

¶ 4. The Webers offered to settle the case for $35,000, pursuant to WIS. STAT. RULE 807.01.[1] White and Farmers Insurance countered with an offer of judgment

---

[1] WISCONSIN STAT. RULE 807.01 provides, as relevant:

**Settlement offers. (1)** After issue is joined but at least 20 days before the trial, the defendant may serve upon the plaintiff a written offer to allow judgment to be taken against the defendant for the sum, or property, or to the effect therein specified, with costs. If the plaintiff accepts the offer and serves notice thereof in writing, before the trial and within 10 days after receipt of the offer, the plaintiff may file the offer, with proof of service of the notice of acceptance, and the clerk must thereupon enter judgment accordingly. If notice of acceptance is not given, the offer cannot be given as evidence nor mentioned on the trial. If the offer of judgment is not accepted and the plaintiff fails to recover a more favorable judgment, the plaintiff shall not recover costs but defendant shall recover costs to be computed on the demand of the complaint.

. . . .

**(3)** After the issue is joined but at least 20 days before trial, the plaintiff may serve upon the defendant a written offer of settlement for the sum, or property, or to the effect therein specified, with costs. If the defendant accepts the offer and serves notice thereof in writing, before trial and within 10 days after receipt of the offer, the defendant may file the offer, with proof of service of the notice of acceptance, with the clerk of court. If notice of acceptance is not given, the offer cannot be given as evidence nor mentioned on the trial. If the offer of settlement is not

for $20,000 under the rule. The Webers rejected White's and Farmers Insurance's offer and took the case to trial. On the morning of the trial, the parties stipulated that White was "100% negligent in causing the accident" and that Mrs. Weber was not "causally negligent to any degree."

¶ 5. At trial, Dr. Hanacik testified about Mrs. Weber's health-care expenses. According to Dr. Hanacik, Mrs. Weber had a permanent "shoulder impingement" as a result of the accident. He testified that he treated her shoulder on an "as-needed basis" and that she would need future health care to treat the injury:

> Future care for her I would probably say would probably be around 20 to 25 visits a year, probably, on an average. I mean, if it's better, it's better. If it's worse, it's worse, but when I do it on an as-needed basis, I mean, she comes in when she's got a problem.

On cross-examination, however, Dr. Hanacik admitted that he could not give an opinion to a reasonable degree of chiropractic certainty on the amount of future therapy that Mrs. Weber would need to treat her shoulder injury:

> Q. So you are not saying to a reasonable degree of chiropractic certainty she is going to be in 20 to 25 times a year for the next 35 years?

accepted and the plaintiff recovers a more favorable judgment, the plaintiff shall recover double the amount of the taxable costs.

(4) If there is an offer of settlement by a party under this section which is not accepted and the party recovers a judgment which is greater than or equal to the amount specified in the offer of settlement, the party is entitled to interest at the annual rate of 12% on the amount recovered from the date of the offer of settlement until the amount is paid. Interest under this section is in lieu of interest computed under ss. 814.04 (4) and 815.05 (8).

A. No, I'm not. I'm just saying that she is going to be there if she's got pain.

Q. You can't really give us any ballpark figure as to how many times you'll need to see her next year?

A. No, I can't.

Dr. Hanacik was the only expert witness to testify on the issue of future health-care expenses.

¶ 6. A jury awarded the Webers $5,000 for future health-care expenses. The parties stipulated that the Webers were owed a set amount for past health-care expenses. The jury also awarded the Webers damages for: past health-care expenses that were in dispute; past pain, suffering, and disability; and future pain, suffering, and disability. The total verdict was $36,278.50.

¶ 7. White and Farmers Insurance filed a motion after the verdict to vacate the jury's award of future health-care expenses. Citing *Ianni v. Grain Dealers Mutual Insurance Co.*, 42 Wis. 2d 354, 166 N.W.2d 148 (1969), they claimed that the jury could not rely on Dr. Hanacik's testimony to determine an amount of future health-care expenses because his testimony on cross-examination "directly and completely contradicted" his testimony on direct-examination.

¶ 8. The Webers argued that Dr. Hanacik's testimony on cross-examination was not contradictory because defense counsel elicited from Dr. Hanacik denials regarding treatment at specific times, while Dr. Hanacik's testimony on direct-examination addressed the average amount of treatment Mrs. Weber would need. They also contended that if the testimony was contradictory, the verdict should stand because the fact-finder resolves conflicts in the evidence.

¶ 9. The trial court denied the defendants' motion to vacate the future-health-care-costs portion of the verdict:

> I take a broader view in the sense that the jury — it is a credibility and weight issue . . . . [I]t is not just the cross-examination but it is the totality of the testimony given by the doctor as to her condition.
>
> . . . .
>
> I think there is sufficient information for which the jury to make their decision.

It entered judgment in the amount of $36,278.50 and awarded the Webers double costs and interest pursuant to Wis. Stat. Rule 807.01. The Webers' total recovery was $43,242.34.

## II.

¶ 10. We will sustain a jury verdict "if there is any credible evidence, under any reasonable view, that leads to an inference supporting the jury's finding." *Morden v. Continental AG*, 2000 WI 51, ¶ 38, 235 Wis. 2d 325, 351, 611 N.W.2d 659, 672. When the evidence gives rise to more than one reasonable inference, we must accept the inference reached by the jury, " 'even though [the evidence] be contradicted and the contradictory evidence be stronger and more convincing.' " *Id.*, 2000 WI 51, ¶ 39, 235 Wis. 2d at 352, 611 N.W.2d at 672 (quoted source omitted, alteration in original).

¶ 11. In this case, the standard of review is even more stringent because the trial court approved the jury's award of future health-care expenses when it

denied the motion after the verdict. *See Kuklinski v. Rodriguez*, 203 Wis. 2d 324, 331, 552 N.W.2d 869, 872 (Ct. App. 1996). Thus, we will not disturb the jury's verdict unless "there is such a complete failure of proof that the verdict must be based on speculation." *Coryell v. Conn*, 88 Wis. 2d 310, 315, 276 N.W.2d 723, 726 (1979).

¶ 12. On appeal, White and Farmers Insurance renew their argument that the jury's verdict on future health-care expenses was not supported by any credible evidence because Dr. Hanacik's testimony was fatally contradictory. They point out that: (1) on cross-examination Dr. Hanacik retracted his statement that Mrs. Weber would need twenty to twenty-five visits per year; and (2) Dr. Hanacik admitted on cross-examination that he could not give any "ballpark figures" on the amount of treatment Mrs. Weber would need at specific times in the future. Thus, they claim that the jury's verdict on future health-care expenses was based on speculation. We agree.

¶ 13. Wisconsin uses a two-part test to analyze a jury's award of future health-care expenses: (1) there must be expert testimony of a permanent injury that will require treatment; and (2) an expert must establish the cost of the treatment. *Bleyer v. Gross*, 19 Wis. 2d 305, 311, 120 N.W.2d 156, 159–160 (1963). The plaintiff must demonstrate that the anticipated costs are reasonably certain to occur. *See Brantner v. Jenson*, 121 Wis. 2d 658, 663–664, 360 N.W.2d 529, 532 (1985) ("[R]ecovery may be had for reasonably certain injurious consequences of the tortfeasor's negligent conduct, not for merely possible injurious consequences.").

869

"Where a party relies on the testimony of a single witness to prove a given issue, and the testimony of such witness is contradictory and conflicting with no explanation of the contradiction, and no other fact or circumstance in the case tends to show which version of the evidence is true, no case is made."

*Ianni*, 42 Wis. 2d at 360, 166 N.W.2d at 151 (quoted source omitted).

¶ 14. In this case, there was no evidence from which the jury could infer that Mrs. Weber's future health-care expenses were reasonably certain to occur because Dr. Hanacik's testimony was fatally contradictory. As we have seen, he testified on direct examination that "on average" Mrs. Weber would need twenty to twenty-five visits per year:

Q. Can you give us any idea of future care figures?

A. Future care for her I would probably say would probably be around 20 to 25 visits a year, probably, on an average. I mean, if it's better, it's better. If it's worse, it's worse, but when I do it on an as-needed basis, I mean, she comes in when she's got a problem.

Q. You actually hope she doesn't come in to see you?

A. Exactly. We try to get the patient better, try to do the best we can for the patient.

Q. Typical visit is $70?

A. Typical visit is $60.

Q. $60, I'm sorry. Doctor, did you render all the opinions you gave today to a reasonable degree of chiropractic certainty?

A. Yes, I have.

Dr. Hanacik directly contradicted this testimony on cross-examination when he admitted that he could not "say[ ] to a reasonable degree of chiropractic certainty [that Mrs. Weber] is going to be in 20 to 25 times a year for the next 35 years":

Q. My understanding is you've rendered the opinion to a reasonable degree of chiropractic certainty that she is going to come in 20 to 25 times a year for at least the next 35 years?

A. That is an example of what we've seen this year. That does not mean — I mean, next year I may see her only three times. It depends on what is happening with her.

Q. So you are not saying to a reasonable degree of chiropractic certainty she is going to be in 20 to 25 times a year for the next 35 years?

A. No, I'm not. I'm just saying that she is going to be there if she's got pain.

Q. You can't really give us any ballpark figure as to how many times you'll need to see her next year?

A. No, I can't.

Q. Or the year after that?

A. No, I can't.

Q. Or 35 years from now?

A. No.

¶ 15. Dr. Hanacik's express concession that he could not give an opinion to a reasonable degree of chiropractic certainty on Mrs. Weber's future health-care expenses negated his earlier testimony where he purported to give such an estimate. *See Casimere v. Herman*, 28 Wis. 2d 437, 445–446, 137 N.W.2d 73, 77 (1965) (expert must testify to a reasonable degree of professional certainty).[2] The jury's verdict attempting to divine the costs of future therapy was thus based on nothing but speculation, and the $5,000 award must be vacated. *See Merco Distrib. Corp. v. Commercial Police Alarm Co.*, 84 Wis. 2d 455, 461, 267 N.W.2d 652, 655 (1978) ("it is impossible to base a judgment on 'conjecture, unproved assumptions, or mere possibilities' ") (quoted source omitted).

¶ 16. We reverse the portion of the verdict awarding the plaintiffs $5,000 for future health-care expenses as well as that portion of the judgment awarding to the plaintiffs double costs and interest under WIS. STAT. RULE 807.01, and remand the matter to the trial court with instructions to enter a judgment in accordance with this decision.

*By the Court.*—Judgment reversed in part and cause remanded with directions.

[2] The parties do not attempt to draw a distinction between a reasonable degree of professional certainty on the one hand, and a reasonable degree of professional probability on the other—*Casimere v. Herman*, 28 Wis. 2d 437, 445–446, 137 N.W.2d 73, 77 (1965), uses the phrases as apparent synonyms. *See also Hennekens v. Hoerl*, 160 Wis. 2d 144, 166, 465 N.W.2d 812, 821 (1991) (recognizing that the phrases can be used interchangeably).