Julie L. WEBER and Joshua Weber, Plaintiffs-Respondents-Petitioners,

WEA INSURANCE CORPORATION, Carefirst of Maryland, Inc., d/b/a Carefirst Blue Cross Blue Shield, and Wisconsin Physicians Insurance Corporation, Involuntary-Plaintiffs,

v.

Angelene WHITE and Farmers Insurance Exchange, Defendants-Appellants.

Supreme Court

*No. 03–0471. Oral argument April 7, 2004.—Decided June 8, 2004.*

2004 WI 63

(Also reported in 681 N.W.2d 137.)

For the plaintiffs-respondents-petitioners there were briefs by *Thomas W. Kyle, Jonathan P. Groth and Pitman, Kyle & Sicula, S.C.,* Milwaukee, and oral argument by *Jonathan P. Groth.*

For the defendants-appellants there was a brief by *Michael R. Vescio* and *O'Hagan, Smith & Amundsen, LLC,* Greenfield, and oral argument by *Michael R. Vescio.*

¶ 1. ANN WALSH BRADLEY, J. The petitioners, Julie and Joshua Weber (hereinafter "the Webers"), seek

review of a published decision of the court of appeals reversing a portion of the jury verdict awarding them $5,000 for future health care expenses.[1] The Webers assert that the court of appeals erred when it determined that the award for future health care expenses was based on fatally contradictory testimony and thus not supported by any credible evidence.

¶ 2. The respondents, Angelene White and Farmers Insurance Exchange (hereinafter "White"), contend that the court of appeals erred when it concluded that the circuit court did not erroneously exercise its discretion in denying their motion for relief pending appeal.[2] Specifically, White had sought to pay the clerk of courts a portion of the judgment at issue to avoid the accumulation of further statutory interest.

¶ 3. We agree with the court of appeals that the circuit court did not erroneously exercise its discretion in denying White's motion to pay the clerk of courts. However, we disagree with its conclusion that the verdict for future health care expenses was based on fatally contradictory testimony and thus not supported by any credible evidence. Because we determine that a reasonable jury could have awarded future health care expenses, we reverse the court of appeals and remand for further proceedings.

I

¶ 4. This case arises out of an automobile accident. Julie Weber suffered injuries after a car driven by

---

[1] *Weber v. White,* 2003 WI App 240, 267 Wis. 2d 862, 672 N.W.2d 151 (reversing a judgment of the circuit court for Milwaukee County, Thomas R. Cooper, Judge).

[2] *Weber v. White,* No. 03–0471, unpublished order (Wis. Ct. App. Sept. 23, 2003) (affirming a determination of the circuit court for Milwaukee County, Thomas R. Cooper, Judge).

Angelene White rear-ended her vehicle at the intersection of West Brown Deer Road and North 76th Street, in Milwaukee. Following the accident, Julie Weber was diagnosed with a whiplash injury. When she failed to make a full recovery after physical therapy, she was referred to Dr. George J. Hanacik Jr., for chiropractic treatment.

¶ 5. The Webers commenced this action, alleging that White acted negligently when she hit Julie Weber's car and that, as a result, Julie Weber sustained permanent injuries. Pursuant to Wis. Stat. § 807.01 (1999–2000),[3] the Webers offered to settle their claim for $35,000. White countered with an offer of judgment for $20,000, which the Webers rejected. Prior to trial, the parties stipulated that White was "100% negligent in causing the accident."

---

[3] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise indicated.

Wisconsin Stat. § 807.01 provides in relevant part:

(3) After issue is joined but at least 20 days before trial, the plaintiff may serve upon the defendant a written offer of settlement for the sum, or property, or to the effect therein specified, with costs. If the defendant accepts the offer and serves notice thereof in writing, before trial and within 10 days after receipt of the offer, the defendant may file the offer, with proof of service of the notice of acceptance, with the clerk of court. If notice of acceptance is not given, the offer cannot be given as evidence nor mentioned on the trial. If the offer of settlement is not accepted and the plaintiff recovers a more favorable judgment, the plaintiff shall recover double the amount of the taxable costs.

(4) If there is an offer of settlement by a party under this section which is not accepted and the party recovers a judgment which is greater than or equal to the amount specified in the offer of settlement, the party is entitled to interest at the annual rate of 12% on the amount recovered from the date of the offer of settlement until the amount is paid. Interest under this section is in lieu of interest computed under ss. 814.04(4) and 815.05(8).

¶ 6. Both the doctor who originally treated Mrs. Weber and Dr. Hanacik testified that she was permanently injured and that she would experience future pain and suffering. Dr. Hanacik, however, was the Webers' sole witness concerning future health care expenses. He stated that Julie Weber had suffered a permanent shoulder impingement as a result of the accident and that he treated her on an as-needed basis, depending upon her level of activity. On direct examination he explained:

> One can not estimate exactly what is going to happen, but in seeing what we've seen so far, she has times that she is very, very good where I might not see her for a month, month-and-a-half, and then all of a sudden, there will be an event that may cause her a lot of pain.

¶ 7. Dr. Hanacik further observed that Julie Weber would probably need on an average of 20–25 chiropractic visits per year for future care:

> Future care for her I would probably say would probably be around 20 to 25 visits a year, probably, on an average. I mean, if it's better, it's better. If it's worse, it's worse, but when I do it on an as-needed basis, I mean, she comes in when she's got a problem.

¶ 8. Finally, Dr. Hanacik noted that a typical visit would cost $60. He concluded his testimony by stating that all of his opinions were to a "reasonable degree of chiropractic certainty."

¶ 9. On cross-examination, Dr. Hanacik was asked if it was his opinion to a reasonable degree of chiropractic certainty that Julie Weber would need 20 to 25 visits a year for at least the next 35 years. He answered that 20 to 25 visits a year was an example and that she could possibly need only three visits in one year. He stated:

That is an example of what we've seen this year. That does not mean – I mean, next year I may see her only three times. It depends on what is happening with her.

¶ 10. Dr. Hanacik was asked, "[s]o you are not saying to a reasonable degree of chiropractic certainty she is going to be in 20 to 25 times a year for the next 35 years?" He responded, "No, I'm not." Dr. Hanacik further acknowledged that he could not see into the future and give a "ballpark figure" as to how many times Julie Weber would need treatment. However, Dr. Hanacik did reiterate that he would provide care to her on an as-needed basis for the injury.

¶ 11. The jury awarded Julie Weber $5,000 for future health care expenses. It also awarded her $18,278.50 for past health care expenses, $5,000 for past pain, suffering and disability, and $8,000 for future pain, suffering and disability. The total verdict was $36,278.50.

¶ 12. White moved to vacate the jury's award of future health care expenses. Citing *Ianni v. Grain Dealers Mutual Insurance Co.*, 42 Wis. 2d 354, 166 N.W.2d 148 (1969), White argued that the jury could not rely on Dr. Hanacik to determine future health care expenses because his testimony on cross-examination completely contradicted his testimony on direct examination.

¶ 13. The circuit court denied the motion, explaining that the totality of Dr. Hanacik's testimony provided sufficient evidence to support the jury's award. It then entered judgment awarding the Webers double costs and interest pursuant to Wis. Stat. § 807.01.

¶ 14. While the matter was being appealed, White filed a motion asking the circuit court for permission to pay the clerk of courts a portion of the judgment to

avoid the accumulation of further statutory interest. The circuit court denied the requested relief.

¶ 15. The court of appeals affirmed the circuit court's decision denying White's motion to pay the clerk of courts. *Weber v. White,* No. 03–0471, unpublished order (Wis. Ct. App. Sept. 23, 2003). However, it reversed the portion of the jury verdict awarding $5,000 for future health care expenses, as well as the portion of the judgment awarding double costs and interest under Wis. Stat. § 807.01. *Weber v. White,* 2003 WI App 240, ¶ 16, 267 Wis. 2d 862, 672 N.W.2d 151. Relying on *Ianni,* 42 Wis. 2d 354, the court concluded that Dr. Hanacik's testimony was fatally contradictory and that the jury's verdict was based on nothing but mere speculation. *Id.,* ¶ 15.

## II

¶ 16. Our review of a jury's award is a limited one. *See, e.g., Morden Continental AG,* 2000 WI 51, ¶ 38, 235 Wis. 2d 325, 611 N.W.2d 659. We will sustain a verdict if there is any credible evidence to support it. *Id.* (citing *Meurer v. ITT Gen. Controls,* 90 Wis. 2d 438, 450, 280 N.W.2d 156 (1979); *Giese v. Montgomery Ward,* 111 Wis. 2d 392, 401, 331 N.W.2d 585 (1983)).

¶ 17. In the present case, the scope of our review is further circumscribed because the circuit court approved the jury's award. *See Kuklinski v. Rodriguez,* 203 Wis. 2d 324, 331, 552 N.W.2d 869, 872 (Ct. App. 1996). Thus, we will not upset the verdict unless "there is such a complete failure of proof that the verdict must be based on speculation." *Coryell v. Conn,* 88 Wis. 2d 310, 315, 276 N.W.2d 723 (1979).

¶ 18. In reviewing the denial of a motion for relief pending appeal, we employ an erroneous exercise of discretion standard of review. *See Management Computer Services, Inc. v. Hawkins, Ash Baptie & Co.,* 224 Wis. 2d 312, 330–31, 592 N.W.2d 279 (Ct. App. 1998). Accordingly, we will uphold the circuit court's exercise of discretion, so long as it examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, arrived at a conclusion that a reasonable judge could reach. *Id.* at 330.

### III

¶ 19. In this case, we consider the application of the *Ianni* "no case" rule. Given the testimony of Dr. Hanacik, we must determine whether a reasonable jury could award future health care expenses.

¶ 20. We begin our discussion by examining whether the jury's verdict on future health care expenses was supported by any credible evidence. In order to sustain such an award, two criteria must be met: (1) there must be expert testimony of permanent injuries, requiring future medical treatment and the incurring of future medical expenses; and (2) an expert must establish the cost of such medical expenses. *Bleyer v. Gross,* 19 Wis. 2d 305, 311, 120 N.W.2d 156 (1963).

¶ 21. Both parties agree that Julie Weber's injury is permanent and that the cost per chiropractic visit is $60. However, the parties disagree as to whether a reasonable jury could determine her future health care expenses from Dr. Hanacik's testimony.

¶ 22. White contends, and the court of appeals agreed, that Dr. Hanacik made fatally contradictory

130

statements on cross-examination concerning Julie Weber's future health care expenses. Specifically, they allege that Dr. Hanacik contradicted himself in two ways: (1) by retracting his statement that Julie Weber would need 20 to 25 visits per year; and (2) by refusing to give a "ballpark figure" on the amount of treatment she would need at specific times in the future. Because Dr. Hanacik was the only expert to testify to future health care expenses, White asks this court to apply the "no case" rule from *Ianni*, 42 Wis. 2d at 360.

¶ 23. In *Ianni*, a mother and daughter, who were passengers in an automobile that was involved in a head-on collision, brought a personal injury action against the insurer of the automobile in which they were riding. *Id.* at 358. Six days after the accident, Mrs. Ianni signed a statement that she did not see any part of the accident because she was asleep. *Id.* at 359. Approximately nine months later, she signed another statement, indicating that the other vehicle had crossed the centerline and collided with her family's car. *Id.* Finally, at trial, Mrs. Ianni testified that her family's car was traveling at 70 m.p.h. down the center of the road. *Id.*

¶ 24. Due to the inconsistencies of her account, this court was asked to find the witness stand testimony of Mrs. Ianni incredible as a matter of law. *Id.* at 360. It observed that the general rule would seem to support preclusion of such testimony. Quoting Corpus Juris Secundum, it explained:

> Where a party relies on the testimony of a single witness to prove a given issue, and the testimony of such witness is contradictory and conflicting with no explanation of the contradiction, and no other fact or circumstance in the case tends to show which version of the evidence is true, no case is made.

*Id.* (quoting 32 C.J.S., Evidence, § 1043 at 832).

¶ 25. However, the court went on to distinguish contradictions in the course of the same in-court testimony from contradictions between in-court and out-of-court statements. It observed:

> Where the conflict and contradictions are within the body of the testimony given, the "no case" conclusion follows. Where the conflict or contradiction arises by reason of an earlier statement given by the witness, it is for the jury to determine the question of the weight and credence to be given the witness-stand testimony and prior extrajudicial statement.

*Id.* Thus, the *Ianni* court ultimately chose not to apply the very "no case" rule it articulated.

¶ 26. Although the *Ianni* "no case" rule has existed for 35 years in Wisconsin, no appellate court has ever applied it. The court of appeals recognized this fact in *Liles v. Employers Mut. Insurance,* 126 Wis. 2d 492, 498, 377 N.W.2d 214 (Ct. App. 1985), noting, "we hesitate to [apply the "no case" rule] except in the most extreme cases." Given the severe consequences of the rule, we too believe that it should be reserved for the most extreme cases.

¶ 27. We refuse to apply the *Ianni* "no case" rule to the case at hand because it fails to meet the essence of the test: contradictory testimony. We do not view Dr. Hanacik's testimony as fatally contradictory when viewed as a whole. Rather, we conclude that it provided the jury with credible evidence to determine future health care expenses.

¶ 28. Here the alleged contradictions are contrived. When counsel for White asked Dr. Hanacik if it was his opinion to a reasonable degree of chiropractic

certainty that Julie Weber would need 20 to 25 visits a year for at least the next 35 years, he answered:

> That is an example of what we've seen this year. That does not mean – I mean, next year I may see her only three times. It depends on what is happening with her.

¶ 29. Later in his testimony, Dr. Hanacik acknowledged that he could not see into the future and give a "ballpark figure" as to how many times Julie Weber would need treatment. This is consistent with Dr. Hanacik's repeated insistence that Julie Weber would require future treatment on an "as-needed basis," depending upon her level of activity.

¶ 30. The law does not require mathematical certainty to determine future health care expenses. As long as the decision is based on probability and not possibility, the court can make such an award. *Bleyer*, 19 Wis. 2d at 312.

¶ 31. In this case, two doctors testified that Julie Weber suffered a permanent shoulder impingement as a result of the accident. Dr. Hanacik further explained that she would need future treatment, depending upon her level of activity. Based upon his prior treatment and a review of her medical records, he estimated that her future care would "probably be around 20 to 25 visits a year, probably, on an average." Despite his statements on cross-examination, he never withdrew from this prediction. Because there is credible evidence from which the jury could determine future chiropractic expenses, we do not disturb its award.[4]

---

[4] Since we do not disturb the jury award, the verdict exceeded the Webers' settlement offer of $35,000. Therefore,

## IV

¶ 32. We turn next to White's request for relief from further statutory interest.[5] That interest accrues from the date of the offer of settlement until the judgment is paid. Wis. Stat. § 807.02(4); *Management Computer Services,* 224 Wis. 2d at 331; *see also Ritt v. Dental Care Associates,* 199 Wis. 2d 48, 75, 543 N.W.2d 852 (Ct. App. 1995).

¶ 33. In the present case, White filed a motion for relief pending appeal with the circuit court. Specifically, she sought the court's permission to pay the clerk of courts a portion of the judgment to avoid the accumulation of further statutory interest.

¶ 34. As the court of appeals recognized in *Management Computer Services,* the circuit court has broad discretion to stay execution of a judgment and to condition a stay upon terms it deems appropriate. 224 Wis. 2d at 330. Likewise, the circuit court has broad discretion to grant a partial stay. *Scullion v. Wisconsin Power & Light Co.,* 2000 WI App 120, ¶ 31, 237 Wis. 2d 498, 614 N.W.2d 565. That authority is based on Wis. Stat. § 808.07(2).[6]

---

under Wis. Stat. § 807.01, the Webers are entitled to double fees and costs as awarded by the circuit court.

[5] We note that White did not file a cross-petition for review of this issue. However, once a case is before us, it is within our discretion to review any substantial issue that the case presents. *Univest Corp. v. General Split Corp.,* 148 Wis. 2d 29, 32, 435 N.W.2d 234 (1989). Here, we choose to exercise that discretion, as the challenged action is capable of repetition yet may evade appellate review.

[6] Wisconsin Stat. § 808.07(2) provides in relevant part:

¶ 35. There are four factors for the circuit court to consider when asked to grant a stay of a money judgment pending appeal. *Scullion,* 237 Wis. 2d 498, ¶¶ 18–22.[7] They are: (1) the issues appealed and the likelihood of success on those issues; (2) the need to ensure the collectibility of the judgment and accumulated interest if the appellant does not succeed on appeal; (3) the interest of the appellant; and (4) harm to the respondent that may result if the judgment is not paid until completion of an unsuccessful appeal.[8] *Id.* These factors are not intended to be prerequisites, but rather interrelated considerations that must be balanced together. *Id.,* ¶ 13.

¶ 36. In its oral decision, the circuit court set forth its reasoning. It acknowledged the first factor from *Scullion* was a difficult one for White. The court had rejected her motion after verdict to apply *Ianni's*

---

(2) Authority of a court to grant relief pending appeal.

(a) During the pendency of an appeal, a trial court or an appellate court may:

1. Stay execution or enforcement of a judgment or order;

2. Suspend, modify, restore or grant an injunction; or

3. Make any order appropriate to preserve the existing state of affairs or the effectiveness of the judgment subsequently to be entered.

[7] These factors are taken from *State v. Gudenschwager,* 191 Wis. 2d 431, 529 N.W.2d 225 (1995), Wis. Stat. § 808.07 and its legislative history, and specific interests involved when a money judgment is appealed. *Scullion v. Wisconsin Power & Light Co.,* 2000 WI App 120, ¶ 11, 237 Wis. 2d 498, 614 N.W.2d 565.

[8] The court discussed a fifth factor, the interest of the public, but concluded it is not likely to be relevant in an appeal of a money judgment. *Id.,* ¶ 23.

"no case rule." In doing so, it believed its decision was in accordance with the law and that White would not be successful on appeal.

¶ 37. In consideration of the second factor, the need to ensure collectibility of the judgment and interest if White did not succeed on appeal, the court noted the assets of White's insurance company. It concluded that collectibilty was not an issue for the Webers.

¶ 38. The circuit court then examined the third factor: the interest of White. It reasoned that if White won on appeal, there would be no harm to either party. Additionally, the court concluded that if the Webers won on appeal, the only harm to White would be the statutory interest. The court considered White's use of the money in the meantime and determined that it mitigated any harm from the statutory interest.

¶ 39. Finally, the circuit court weighed the fourth *Scullion* factor, the harm to the Webers. It noted that if the money were paid directly to the clerk, the Webers would not have control of it and would not receive the statutory interest on the judgment. Because this factor weighed heavily in the Webers' favor, the court could not justify granting the requested relief to White.

¶ 40. In the end, we are satisfied that the circuit court examined the relevant facts, applied the correct standard of law, demonstrated a rational process, and reached a decision that a reasonable judge could make. Therefore, we affirm the court of appeals' order upholding the circuit court's exercise of discretion.

V

¶ 41. In sum, we agree with the court of appeals that the circuit court did not erroneously exercise its discretion in denying respondents' motion to pay the

clerk of courts. We disagree, however, with its conclusion that the verdict for future health care expenses was based on fatally contradictory testimony and thus not supported by any credible evidence. Because we determine that a reasonable jury could have awarded future health care expenses, we reverse the court of appeals and remand the cause to the circuit court for determination of costs and statutory interest.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded to the circuit court.