# COURT OF APPEALS
## DECISION
## DATED AND FILED

## June 13, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP60**

Cir. Ct. No. **2021TP18**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

IN RE THE TERMINATION OF PARENTAL RIGHTS TO N. B.,
A PERSON UNDER THE AGE OF 18:

BARRON COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,

PETITIONER-RESPONDENT,

V.

J. W.,

RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Barron County: J. MICHAEL BITNEY, Judge. *Affirmed*.

¶1 STARK, P.J.[1] Jill appeals an order terminating her parental rights (TPR) to her son, Nate.[2] Jill argues that the Barron County Department of Health and Human Services failed to prove by clear and convincing evidence that grounds existed to terminate her parental rights, and that the circuit court, therefore, erroneously exercised its discretion by finding her to be an unfit parent. Additionally, Jill argues that the County presented insufficient evidence for the court to find that termination of her parental rights was in Nate's best interest, and that the court erroneously exercised its discretion in terminating her parental rights. We affirm.

## BACKGROUND

¶2 Nate was born in October 2017, and was removed from Jill's care in December 2020 due to her use of methamphetamine in her home. Pursuant to WIS. STAT. § 48.13(10), a child in need of protection or services (CHIPS) dispositional order was entered after the circuit court found that Jill neglected, refused, or was unable to provide for Nate's care. The order listed conditions for Nate's return, requiring Jill to: attend ongoing individual counseling; meet with a psychiatrist; participate in alcohol and other drug abuse (AODA) treatment; refrain

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

Cases appealed under WIS. STAT. RULE 809.107 are "given preference and shall be taken in an order that ensures that a decision is issued within 30 days after the filing of the appellant's reply." RULE 809.107(6)(e). Conflicts in this court's calendar have resulted in a delay. It is therefore necessary for this court to sua sponte extend the deadline for a decision in this case. *See* WIS. STAT. RULE 809.82(2)(a); *Rhonda R.D. v. Franklin R.D.*, 191 Wis. 2d 680, 694, 530 N.W.2d 34 (Ct. App. 1995). Accordingly, we extend our deadline to the date this decision is issued.

[2] For ease of reading, we refer to the appellant and the child in this confidential matter using pseudonyms, rather than their initials.

from the use of alcohol and illegal drugs; participate in drug tests; maintain safe and adequate housing; and maintain regular contact and visitation with Nate.

¶3    In November 2021, the County filed a petition to terminate Jill's parental rights to Nate, alleging grounds of continuing CHIPS and failure to assume parental responsibility.[3]   In August 2022, a jury trial was held during which the County provided evidence of Jill's lack of progress in meeting the conditions for Nate's return, her failure to successfully complete the conditions, and the efforts that the County made to provide services and assistance to reunify Nate with Jill.

¶4    The jury returned a verdict finding that the County had proved both grounds to terminate Jill's parental rights.  The circuit court subsequently found Jill unfit as a parent.

¶5    At the October 2022 dispositional hearing, Amanda DeLawyer, Jill's ongoing social worker, testified regarding each statutory dispositional factor. Based upon the evidence produced at the hearing, the circuit court concluded it was in Nate's best interest to terminate Jill's parental rights.  Jill now appeals. Additional facts will be provided as necessary below.

---

[3] The County also petitioned to terminate Nate's biological father's parental rights.  His rights are not implicated in this appeal.

**DISCUSSION**

¶6      Jill argues that the County failed to meet its burden to prove the ground of continuing CHIPS.[4]  She also argues the circuit court erroneously exercised its discretion in weighing the statutory dispositional factors and other factors and by finding that it was in Nate's best interest to terminate her parental rights.  We conclude that the County met its burden to prove the continuing CHIPS ground and that the court properly exercised its discretion in finding that it was in Nate's best interest to terminate Jill's rights.

¶7      "Wisconsin has a two-part statutory procedure for the involuntary termination of parental rights."  ***Steven V. v. Kelley H.***, 2004 WI 47, ¶24, 271 Wis. 2d 1, 678 N.W.2d 856.  The first part is the grounds phase, in which a petitioner must prove by clear and convincing evidence that grounds exist for a TPR.  ***Oneida Cnty. Dep't of Soc. Servs. v. Nicole W.***, 2007 WI 30, ¶¶11-12, 299 Wis. 2d 637, 728 N.W.2d 652.  If the fact finder determines that grounds for a TPR exist, "the [circuit] court shall find the parent unfit."  WIS. STAT. § 48.424(4). The second phase is the dispositional hearing, where the focus is "on the best interests of the child," and the circuit court weighs the factors in WIS. STAT. § 48.426(3) to determine "whether the best interests of the child are served by the termination of the parent's rights."  *See **Nicole W.***, 299 Wis. 2d 637, ¶13.

---

[4] Jill also argues that the County failed to prove the ground of failure to assume parental responsibility.  We need not address this issue because we conclude that the County proved the continuing CHIPS ground, and only one ground is required for a TPR.  *See **Steven V. v. Kelley H.***, 2004 WI 47, ¶24, 271 Wis. 2d 1, 678 N.W.2d 856 (stating that a petitioner must prove that one or more of the statutory grounds for a TPR exist); ***Sweet v. Berge***, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983) (holding that an appellate court need not address every issue raised by the parties when one issue is dispositive).

## I. The County presented sufficient evidence to prove the continuing CHIPS ground.

¶8    "Our standard of review in a challenge to the sufficiency of the evidence is whether there is any credible evidence to sustain the verdict." *St. Croix Cnty. Dep't of Health & Hum. Servs. v. Matthew D.*, 2016 WI 35, ¶29, 368 Wis. 2d 170, 880 N.W.2d 107.  Even "if the evidence gives rise to more than one reasonable inference, we accept the particular inference reached by the jury." *Morden v. Continental AG*, 2000 WI 51, ¶39, 235 Wis. 2d 325, 611 N.W.2d 659.

¶9    The County was required to prove by clear and convincing evidence the following elements for termination of Jill's parental rights under the continuing CHIPS ground:

> 1. That the child has been adjudged to be a child or an unborn child in need of protection or services and placed, or continued in a placement, outside his or her home pursuant to one or more court orders ….
>
> 2.
>
>   ….
>
> b. That the agency responsible for the care of the child and the family or of the unborn child and expectant mother has made a reasonable effort to provide the services ordered by the court.
>
> 3. That the child has been placed outside the home for a cumulative total period of 6 months or longer pursuant to an order listed under subd. 1., not including time spent outside the home as an unborn child; that the parent has failed to meet the conditions established for the safe return of the child to the home; and, if the child has been placed outside the home for less than 15 of the most recent 22 months, that there is a substantial likelihood that the parent will not meet these conditions as of the date on which the child will have been placed outside the home for 15 of the most recent 22 months, not including any period during which the child was a runaway from the out-of-home placement or was residing in a trial reunification home.

WIS. STAT. § 48.415(2)(a).

¶10    The County called nine witnesses to present evidence in support of the continuing CHIPS ground to terminate Jill's parental rights and Jill also testified. DeLawyer testified that Nate had remained out of Jill's care since his initial removal. She stated that Jill's supervised visits with Nate began upon his removal and have continued since that time. However, DeLawyer noted that these visits were not consistent; there were several weeks where no visits occurred, and no visits took place in August 2021. DeLawyer testified that Jill did meet with a psychiatrist and began taking medications. She further testified, however, that Jill experienced continued housing issues, including an eviction, and Jill voluntarily left a shelter twice.

¶11    Amelia Collins, a substance abuse counselor, testified that Jill had successfully completed her AODA programming in July 2021. Nevertheless, David Kunz, Ph.D., a laboratory director, testified that during the pendency of the CHIPS order, Jill tested positive for THC and methamphetamine. The County introduced an exhibit showing that Jill tested positive for illegal substances four times: twice in January 2021, and twice in February 2021. DeLawyer testified that Jill removed her sweat patch used for drug testing without permission in August 2021.

¶12    Tammy Dammer, a service provider who met with Jill to form a treatment plan to address Jill's needs, testified that she provided supervised visits and a parenting assessment for Jill. Danielle Neurer, an initial assessment social worker, testified that she provided four sweat patch drug tests to Jill. Jill testified that there were no additional services other than "budgeting" that she felt the County could have provided that would have been beneficial to her.

¶13    In arguing that the County failed to meet its burden of proof, Jill highlights her parenting efforts before Nate was removed from her care, namely: that she received prenatal care; that Nate received required immunizations; that Nate had food and shelter and was developing appropriately; and that she took steps to engage Nate in preschool programming. Jill also notes her recent engagement in individual counseling and her residency at the time of trial.  Additionally, Jill mentions her recent employment and her vehicle ownership.

¶14    Jill's arguments, however, ignore our standard of review.  Jill fails to show how the evidence presented by the County does not support the jury's verdict.  Instead, she cites only the evidence most favorable to her and she fails to meaningfully tie any of that evidence to the elements of continuing CHIPS.

¶15    We conclude the County provided ample evidence for the jury to find that the elements of the continuing CHIPS ground were satisfied.  *See Matthew D.*, 368 Wis. 2d 170, ¶29.  As to the first element, it is undisputed that Nate was removed from Jill's care pursuant to a CHIPS order and that he had not returned to Jill's care since his removal in December 2020.

¶16    Regarding the reasonable efforts element, the County was required to provide "an earnest and conscientious effort to take good faith steps to provide the services ordered by the court which takes into consideration the characteristics of the parent or child, … the level of cooperation of the parent … and other relevant circumstances of the case."  WIS. STAT. § 48.415(2)(a)2.a.  Again, the evidence provided in support of this element was virtually undisputed.  In fact, Jill testified there were no other efforts she felt the County should have provided her that she did not receive other than "budgeting."  This skill was not part of Jill's

court-ordered conditions, and she makes no developed argument as to how this skill could have helped her meet those conditions.

¶17 Lastly, the County provided ample evidence of the conditions established for Nate's return and of Jill's failure to meet those conditions. Jill was required to refrain from illegal drug use, yet Dr. Kunz testified that Jill tested positive for methamphetamine and THC, and the County introduced an exhibit documenting Jill's four failed drug tests. DeLawyer also testified about an incident where Jill reported a relapse. Jill was required to maintain safe and adequate housing. However, DeLawyer testified that Jill continually had issues with housing and she was evicted, and voluntarily left a shelter twice. Jill was required to maintain regular visitation with Nate; but DeLawyer's testimony showed that Jill did not visit with Nate consistently and failed to visit him at all for one month.

¶18 Jill does not appear to dispute the evidence provided by the County as to this last element. Instead, she emphasizes the positive efforts she made to care for her son. Given the above evidence, however, we conclude that a jury could reasonably find that Jill failed to meet her required conditions. And, even if the evidence that Jill cites would permit us to infer that she met some of her court-ordered conditions, "we accept the particular inference reached by the jury." *See* **Morden**, 235 Wis. 2d 325, ¶39.

## II. The circuit court did not erroneously exercise its discretion in finding that the termination of Jill's parental rights was in Nate's best interest.

¶19 "The ultimate determination of whether to terminate parental rights is discretionary with the circuit court." **Darryl T.-H. v. Margaret H.**, 2000 WI 42, ¶27, 234 Wis. 2d 606, 610 N.W.2d 475. "Our review of a [circuit] court's

discretionary decision is highly deferential." ***Olivarez v. Unitrin Prop. & Cas. Ins. Co.***, 2006 WI App 189, ¶16, 296 Wis. 2d 337, 723 N.W.2d 131. "[W]e will uphold the circuit court's exercise of discretion so long as it examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, arrived at a conclusion that a reasonable judge could reach." ***Weber v. White***, 2004 WI 63, ¶18, 272 Wis. 2d 121, 681 N.W.2d 137. Although evidence may present competing factual inferences, the circuit court's findings are to be upheld if they do not go against the great weight and clear preponderance of the evidence. ***Country Visions Coop. v. Archer-Daniels-Midland Co.***, 2021 WI 35, ¶19, 396 Wis. 2d 470, 958 N.W.2d 511.

¶20 At the dispositional hearing, DeLawyer testified regarding the statutory dispositional factors.[5] She stated that Nate is adoptable and his current

---

[5] The six factors that a circuit court must consider at a dispositional hearing are:

> (a) The likelihood of the child's adoption after termination.
>
> (b) The age and health of the child, both at the time of the disposition and, if applicable, at the time the child was removed from the home.
>
> (c) Whether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships.
>
> (d) The wishes of the child.
>
> (e) The duration of the separation of the parent from the child.
>
> (f) Whether the child will be able to enter into a more stable and permanent family relationship as a result of the termination, taking into account the conditions of the child's current placement, the likelihood of future placements and the results of prior placements.

WIS. STAT. § 48.426(3).

placement would be an adoptive resource. DeLawyer identified that Nate was four years old and in good physical health. Regarding whether Nate had a substantial relationship with Jill, DeLawyer testified she did not believe it would be harmful to Nate to terminate Jill's parental rights. She stated that Nate had expressed his desire to be adopted by his current foster parents, whom he referred to as "[m]om and [d]ad," and that Nate had said "he wants to live there forever." DeLawyer also noted that Nate had lived a significant amount of his life in out-of-home placement, and she opined that Nate would have more permanency and a more stable family relationship if Jill's parental rights were terminated.

¶21 The circuit court considered the above evidence when weighing each dispositional factor. It noted that there were no barriers to Nate's adoption, that Nate was in good health physically and emotionally, and that he had no substantial relationship with Jill. While the court noted that Nate wanted to be adopted by his current placement, the court found that Nate was too young for the court to heavily weigh his wishes. The court further considered that Jill and Nate had been separated for nearly two years and found that Nate would be able to enter into a more stable situation if Jill's parental rights were terminated.

¶22 In weighing each of the statutory dispositional factors, the circuit court noted that it had "no doubt" that Jill loves her son and that "there may have been some progress," but the court stated there had not been "significant progress." Additionally, the court noted that Jill "continue[s] to struggle with AODA issues.… and with domestic violence." After considering all of the proper factors, the court found it was in Nate's best interest to terminate Jill's parental rights.

¶23    In arguing that the circuit court erroneously exercised its discretion when weighing the statutory factors, Jill again ignores our standard of review. Jill claims that the court gave "excessive emphasis to the historic information that is based on the fact[s] at the time of the removal of [Nate] from the parental home." She asserts that this evidence occurred either "long before Nate was born," or months before the dispositional hearing. Jill further contends that the court failed to sufficiently account for the fact that she "continues to express her love and hold[s] the desire to have her child ultimately returned to her," and that the court "did not give sufficient weight to the efforts she recently made to continue as a significant factor in [Nate's] life and the life of her teenage child and sibling to [Nate]."

¶24    Jill fails to acknowledge that the circuit court was aware that Nate's sibling was also removed from Jill's care, and the court specifically noted that Nate "will be able to maintain a relationship with his biological sibling" regardless of the TPR. As stated, the court noted that Jill may have made some recent progress, and it acknowledged her love for Nate. The court nonetheless found that "there has not been significant progress," specifically mentioning Jill's recurring AODA issues and domestic violence in the home. The court examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach. *See **Weber***, 272 Wis. 2d 121, ¶18. We will not disturb this proper exercise of discretion.

    *By the Court.*—Order affirmed.

    This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.